[No. 41227-2-I. Division One. February 1, 1999.]

DANELLE HODDEVIK, *Respondent*, v. ARCTIC ALASKA FISHERIES CORPORATION, ET AL., *Appellants*.

*David C. Bratz, Amanda A. Owen,* and *Gail L. Pyle* of *LeGros, Buchanan & Paul,* for appellants.

*Mary R. Mann* of *Mann & Peck;* and *Jeffrey Cowan,* for respondent.

BAKER, J. — Arctic Alaska Fisheries Corp. (Arctic) appeals from a judgment entered on a jury verdict finding it liable to a crew member of a fishing vessel under the Jones Act, 46 U.S.C. app. § 688. Danelle Hoddevik cross-appeals the summary judgment dismissal of her RCW 49.60 claim for discrimination. We hold that the trial court improperly instructed the jury as to the elements of a claim under the Jones Act for negligent infliction of emotional distress. We also hold that Hoddevik's discrimination claim should not have been dismissed as preempted by federal maritime law. We thus reverse the jury's verdict under the Jones Act as well as the trial court's summary judgment dismissal of Hoddevik's RCW 49.60 claim.

I

Hoddevik worked as a fish cutter on Arctic's factory trawler, the *Ocean Enterprise (Enterprise).*[1] She claims that her male co-workers spoke to her, and about her, in a sexually explicit manner, and that she was propositioned to

---

[1] Arctic concedes that Hoddevik was a member of the ship's crew, or a "seaman" for purposes of maritime law and the Jones Act.

perform sexual acts. Hoddevik also claims that a non-English speaking Bulgarian immigrant, Doykov, was taught sexually offensive language and told to repeat it to her, and that another Bulgarian, Mankov, spoke better English and facilitated this behavior.

Hoddevik complains of several other improper incidents on the *Enterprise*. For example, first mate Street pulled off a male crew member's towel when the crew member was walking to his cabin from a shower. Hoddevik saw this incident. Hoddevik alleges that Doykov exposed himself to her in the ship's laundry room. She also alleges that after the laundry room incident, Mankov attempted to rape her in his cabin.

In July 1992, Hoddevik left the *Enterprise* due to unrelated physical injuries that occurred during her period of employment. She subsequently filed this case, alleging unseaworthiness, maintenance and cure, negligence under the Jones Act, and state law claims, including a claim under RCW 49.60, the Washington Law Against Discrimination (WLAD). Upon Arctic's motion for summary judgment, the trial court dismissed Hoddevik's state law claims as preempted by federal maritime law. Hoddevik appeals dismissal of her RCW 49.60 claim. At trial, the jury did not find Arctic liable for unseaworthiness or maintenance and cure, but did find Arctic liable under the Jones Act. Arctic appeals the Jones Act verdict.

## II

■■ Federal judicial power "extend[s] . . . to all cases of admiralty and maritime jurisdiction."[2] Federal jurisdiction is exclusive over any in rem maritime cause of action.[3] In fact, federal jurisdiction is exclusive in all civil cases of admiralty and maritime jurisdiction, except for those under a federal statute that allows for "saving to suitors in all

[2]U.S. CONST., art. III, § 2, cl. 1.

[3]*American Dredging Co. v. Miller,* 510 U.S. 443, 446, 114 S. Ct. 981, 127 L. Ed. 2d (1994).

cases all other remedies to which they are otherwise entitled."[4] Under this statute, a plaintiff may file an in personam maritime claim in state court where Congress has authorized such suits, or where such suits were known at common law and Congress has not conferred exclusive jurisdiction on the federal courts.[5]

For cases that can be brought in state court under the "saving to suitors" clause, a state court may " 'adopt such remedies, and . . . attach to them such incidents, as it sees fit' so long as it does not attempt to make changes in the 'substantive maritime law.' "[6] State courts must follow substantive maritime law in such cases.[7] Moreover, a state court may not provide a remedy which "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations."[8]

The Jones Act provides in relevant part:

### Recovery for injury to or death of seaman

(a) Application of railway employee statutes; jurisdiction

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending

---

[4]28 U.S.C. § 1333(1).

[5]*See* 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 4-2, at 134-36 (2d ed. 1994).

[6]*Miller,* 510 U.S. at 447 (quoting *Madruga v. Superior Court,* 346 U.S. 556, 561, 74 S. Ct. 298, 301, 98 L. Ed. 290 (1954) (quoting *Red Cross Line v. Atlantic Fruit Co.,* 264 U.S. 109, 124, 44 S. Ct. 274, 277, 68 L. Ed. 582 (1924))).

[7]*Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222-23, 106 S. Ct. 2485, 91 L. Ed. 2d 174 (1986); *see also Stanton v. Bayliner Marine Corp.,* 123 Wn.2d 64, 866 P.2d 15 (1993) (substantive maritime law applies when the events giving rise to a lawsuit occur on navigable waters and the activity has the potential to affect maritime commerce).

[8]*Miller,* 510 U.S. at 447 (quoting *Southern Pac. Co. v. Jensen,* 244 U.S. 205, 216, 37 S. Ct. 524, 529, 61 L. Ed. 1086 (1917)); *see also Stanton,* 123 Wn.2d at 87-89 (federal interest in uniform substantive maritime law preempted conflicting state law).

the common-law right or remedy in cases of personal injury to railway employees shall apply; . . . Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located. [9]

The relevant railway employee statutes are collectively known as the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-1301. In personam Jones Act claims may be brought in state or federal courts by way of the "saving to suitors" clause.[10]

## Jones Act Negligence

█ The Jones Act provides no cause of action for sexual harassment, but does allow a limited cause of action for damages due to negligent infliction of emotional distress. Under FELA, and thus by extension under the Jones Act, a worker seeking to recover for negligent infliction of emotional distress is limited by the "zone of danger" test first set forth in *Consolidated Rail Corp. v. Gottshall*.[11]

The "zone of danger" test limits recovery for emotional injuries to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct.[12] Only those within the zone of danger of physical impact can recover.[13] Two post-*Gottshall* appellate cases which address negligent infliction of emotional distress under FELA confirm this rule and apply *Gottshall*'s requirement for a physical impact or the immediate risk of physical harm due

---

[9]46 U.S.C. app. § 688.

[10]*Miller*, 510 U.S. 443.

[11]*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 548, 114 S. Ct. 2396, 129 L. Ed. 2d 427 (1994) (railroad employees may recover for emotional damages caused by an employer's negligent conduct that imminently threatens an employee with physical impact, but not for emotional injuries stemming from a stressful working environment).

[12]*Id.* at 547-48.

[13]*Id.* at 548 (citations omitted).

to a defendant's negligence under the "zone of danger" test.[14] Thus, under the "zone of danger" test set forth in *Gottshall*, a Jones Act claim such as Hoddevik's must also show a physical impact due to an employer's negligent conduct, or the immediate risk of physical harm caused by that conduct.[15]

■ Arctic contends that the trial court should have granted it a directed verdict or judgment notwithstanding the verdict (N.O.V.) because the "zone of danger" test is not satisfied in the instant case. In reviewing a motion for a directed verdict or judgment N.O.V., we apply the same standard as the trial court (i.e., de novo) and reverse only if the evidence is insufficient to support the verdict as a matter of law.[16] The trial record must contain evidence sufficient to persuade a rational, fair-minded person of the truth of the premise in question.[17]

Hoddevik claims she was assaulted by Mankov, which would be a physical impact for purposes of the zone of danger test. Hoddevik must come forward with sufficient evidence to persuade a rational, fair-minded person of a physical impact due to Mankov's alleged assault. Under the "zone of danger" analysis, she must also prove that Arctic was negligent. Maritime law causes of action for an employer's negligence where a crew member is assaulted require that an assault is foreseeable and that the ship's officers failed to prevent such an assault.[18] Arctic contends that it is entitled to judgment as a matter of law because the jury rejected these possibilities when it found for Arctic on the unseaworthiness claim.

Jury instruction number nineteen states:

---

[14]*Metro-N. Commuter R.R. v. Buckley*, 521 U.S. 424, 431, 117 S. Ct. 2113, 2117, 138 L. Ed. 2d 560 (1997); *Szymanski v. Columbia Transp. Co.*, 154 F.3d 591, 594-95 (6th Cir. 1998).

[15]*Gottshall*, 512 U.S. at 547-48.

[16]*Hume v. American Disposal Co.*, 124 Wn.2d 656, 667, 880 P.2d 988 (1994).

[17]*Canron, Inc. v. Federal Ins. Co.*, 82 Wn. App. 480, 486, 918 P.2d 937 (1996), *review denied*, 131 Wn.2d 1002, 932 P.2d 643 (1997).

[18]*See Miles v. Melrose*, 882 F.2d 976, 983-84 (5th Cir. 1989), *aff'd sub nom. Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S. Ct. 317, 112 L. Ed. 2d 275 (1990).

A vessel may be unseaworthy if it has in its crew a crewmember who assaults another crewmember. However, not every assault is proof of unseaworthiness. For example, a fistfight between two crewmembers does not necessarily create or indicate an unseaworthy condition. Only assaults committed by a crewmember whose conduct is significantly below the usual and customary standards of the calling of men and women who work at sea will indicate an unseaworthy condition of the vessel . . . .

Jury instruction number twenty states:

In determining whether the Ocean Enterprise was unseaworthy as defined in these instructions, you must not concern yourself with the question of defendant's knowledge of the factors that rendered the vessel unseaworthy. If you find that the vessel was rendered unseaworthy by crew conduct, it does not matter if the defendant did not know about such conduct, or if it did not know that certain crewmembers were of such dispositions that were likely to cause them to engage in such conduct. It also does not matter how many times such conduct occurred, if you determine that the conduct constituted an unseaworthy condition.

The above instructions do not require that the assault was foreseeable or that ship's officers failed to prevent the assault, but an "assault committed by a crewmember whose conduct is significantly below the usual and customary standards of the calling of men and women who work at sea."

We think it very unlikely that a jury could find that an assault might be conduct which meets "the usual and customary standards of the calling of men and women who work at sea" and was foreseeable, but nonetheless preventable by ship's officers. However, we do not conclude that a jury could not so decide.

■■■■ Arctic contends in the alternative that it is entitled to a new trial because the jury was improperly instructed on Hoddevik's Jones Act claim. Civil jury instructions are

reviewed de novo on appeal.[19] Appealed jury instructions are reviewed to determine whether they permit the parties to argue their theories of the case, whether they are misleading, and whether they accurately inform the jury of the applicable law.[20] An instruction which erroneously states the applicable law constitutes reversible error if a party is prejudiced.[21] An error is prejudicial where the outcome at trial is affected.[22]

Here, jury instruction number twelve reads:

> Plaintiff alleges that she was sexually harassed, abused, and assaulted aboard the Ocean Enterprise, and that defendant was negligent in permitting plaintiff to be sexually harassed, abused, and assaulted aboard the Ocean Enterprise.

> If you find that defendant was negligent in any way in allowing sexual harassment of plaintiff to occur, and if you find that the harassment played any part, no matter how slight, in causing plaintiff's injuries, you must find defendant liable for her damages.

> In order to find defendant liable based on sexual harassment, you must find that the conduct affecting plaintiff created a threat beyond sex discrimination. This limitation does not apply to your consideration of liability for sexual abuse or assault.

This jury instruction is problematic. It allows a finding of liability if the defendant was negligent "in any way" for allowing Hoddevik to be sexually harassed. It does not properly inform the jury of the law under *Gottshall*. It indicates that a finding based on sexual harassment must show a threat beyond sex discrimination but fails to provide guidance on the legal relationship between those two terms

[19]*Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995).

[20]*Adcox v. Children's Orthopedic Hosp.*, 123 Wn.2d 15, 36, 864 P.2d 921 (1993) (citing *Douglas v. Freeman*, 117 Wn.2d 242, 256-57, 814 P.2d 1160 (1991)).

[21]*Hue*, 127 Wn.2d at 92.

[22]*Stiley v. Block*, 130 Wn.2d 486, 499, 925 P.2d 194 (1996).

or what might constitute such a threat. The jury was left to speculate as to the state of the law. Under these jury instructions we cannot say that Arctic would have been found liable if the jury had been asked to apply the correct legal standard. We reverse the jury's verdict.

## Federal Maritime Law Preemption of RCW 49.60

 Hoddevik's discrimination claim was dismissed upon Arctic's motion for summary judgment on the basis that such claims are preempted under federal maritime law. On appeal, we address federal maritime preemption of Hoddevik's claim under RCW 49.60 as a question of law and review the trial court's determination de novo.[23]

RCW 49.60.030 provides in relevant part:

**Freedom from discrimination—Declaration of civil rights**

(1) The right to be free from discrimination because of race, creed, color, national origin, sex, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a disabled person is recognized as and declared to be a civil right. This right shall include, but not be limited to:

> (a) The right to obtain and hold employment without discrimination

> . . .

(2) Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter . . . .

 State legislation may be preempted by federal law

---

[23]*Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994)).

in more than one way. First, Congress may preempt state law by stating so in express terms.[24] Second, Congress may preempt state law where a scheme of federal regulation is sufficiently comprehensive to allow a reasonable inference that Congress "left no room" for supplementary state regulation.[25] Third, where Congress has "left room" for supplementary state regulation, federal law may preempt state law to the extent it actually conflicts with federal law.[26] Such a conflict exists where compliance with both state and federal law is impossible, or where state law presents an obstacle to the accomplishment and execution of federal purposes and objectives.[27]

 Congress has not expressly preempted state human rights statutes such as RCW 49.60. Congress has "left room" for supplementary state regulation in the area of human rights, and there are many states where statutory antidiscrimination laws coexist with federal anti-discrimination laws, and where state schemes often compliment the federal scheme.[28] The inquiry thus focuses on whether Washington law presents an actual conflict with maritime law.

Under such an inquiry, state legislation may be preempted if it directly conflicts with substantive maritime law or interferes with its "proper harmony and uniformity."[29] As discussed above, recovery for negligent infliction of emotional distress under the Jones Act is problematic under facts such as those in the instant case (e.g. restrictive "zone of danger" test) and does not provide a

---

[24]*California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280, 107 S. Ct. 683, 93 L. Ed. 2d 613 (1987).

[25]*Id.* at 280-81.

[26]*Id.* at 281.

[27]*Id.*

[28]*See Developments—Employment Discrimination*, 109 Harv. L. Rev. 1568, 1575-77 (1996).

[29]*Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 628 (1st Cir. 1994) (quoting *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 216, 37 S. Ct. 524, 61 L. Ed. 1086 (1917)).

"right to obtain and hold employment without discrimination."[30] We find no direct conflict between the limited cause of action provided by the Jones Act (i.e., requiring a physical impact) and RCW 49.60.

Even without a direct conflict, state legislation may be preempted if it interferes with the "proper harmony and uniformity" of substantive maritime law.[31] Such a determination requires a balancing of state and federal interests.[32] In reaching our determination in the instant case, we have considered the reasoning of our Supreme Court in *Stanton v. Bayliner Marine Corp.*, 123 Wn.2d 64, 87-88, 866 P.2d 15 (1993) (substantive maritime law precluded application of state product liability act for economic loss of yachts).

At issue in *Stanton* was the definition of "economic loss" under state law. The United States Supreme Court had fashioned a judicial remedy under admiralty law which precluded recovery for pure economic loss.[33] The Court of Appeals held that Washington's definition of economic loss should apply, stating "[w]hatever federal interest in uniformity exists, it is outweighed by Washington's concern to ensure the personal safety of its citizens, to deter the manufacture and dissemination of dangerous products, and to exercise its authority over tortfeasors acting within its jurisdiction."[34] Our Supreme Court held that "the state interests articulated by the Court of Appeals do not obviate the need for uniformity in maritime products liability law."[35] The *Stanton* court stated that even if there were no actual conflict between state and federal remedies, Washington's interest in providing a remedy to the *Stanton*

---

[30]RCW 49.60.030(1)(a).

[31]*Ballard Shipping*, 32 F.3d at 628.

[32]*Ballard Shipping*, 32 F.3d at 628 (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 738-42, 81 S. Ct. 886, 6 L. Ed. 2d 56 (1961)).

[33]*Stanton v. Bayliner Marine Corp.*, 123 Wn.2d 64, 83-84, 866 P.2d 15 (1993).

[34]*Stanton v. Bayliner Marine Corp.*, 68 Wn. App. 125, 132, 844 P.2d 1019 (1992), *rev'd*, 123 Wn.2d 64, 866 P.2d 15 (1993), *cert. denied*, 513 U.S. 819 (1994).

[35]*Stanton*, 123 Wn.2d at 84.

plaintiffs did not outweigh the federal interests in maritime uniformity.[36] The Supreme Court was highly deferential to the need for uniform maritime law, engaged in extensive analysis of law from other jurisdictions, and held that state product liability law was preempted.[37]

Unlike *Stanton*, there is no judicially fashioned admiralty rule on point here.[38] The case at bar involves sexual harassment claims under the Washington Law Against Discrimination, not the Washington Product Liability Act. The policies, considerations, and goals of these two enactments are not equivalent. *Stanton* is thus distinguishable.

In reaching our determination in the instant case, we have also considered the reasoning of the federal district court in *Morgan v. Tyson Seafood Group Inc.*,[39] a recent case involving disability discrimination and the Jones Act. *Morgan* balanced federal interests against Washington's employment discrimination laws, and held that the proper harmony and uniformity of substantive maritime law does not preempt RCW 49.60.[40] We agree with the analysis in *Morgan*, and find that the reasoning of that case can also be extended to include sexual discrimination claims under RCW 49.60.

In the instant case, as in *Morgan*, the State of Washington has a great interest in applying its antidiscrimination laws to Arctic. Arctic is a corporation organized under the laws of the State of Washington, and hired Hoddevik in Seattle. Arctic should be subject to liability if it engaged in behavior impermissible under RCW 49.60. Washington has a strong interest in protecting its citizens, like Hoddevik, from

[36] *Id.*

[37] *Id.* at 85-89.

[38] *Id.* at 87.

[39] 1997 WL 882599, 1998 A.M.C. 1185 (W.D. Wash. 1997) (plaintiff in rehabilitative therapy due to a work related injury brought claims under the Jones Act for physical injury, claims under general maritime law, and a discrimination claim under RCW 49.60 after being told by the defendant that he no longer had a job and would not be rehired).

[40] *Id.*

injury.[41] It is true that the federal interest in uniform maritime law may be burdened by application of Washington's antidiscrimination scheme. But there are many states where maritime enterprises are already subject to state antidiscrimination laws which coexist with similar federal laws.[42] The trial court improperly held that federal maritime law preempted Hoddevik's RCW 49.60 claim.

We reverse summary judgment on Hoddevik's RCW 49.60 claim because it is not preempted by federal maritime law. We also reverse the jury's verdict on Hoddevik's Jones Act claim because the jury instructions should have set forth the correct legal standard under the "zone of danger" test for Jones Act liability. Failure to properly instruct the jury of the law under the Jones Act was reversible error.

Reversed.

WEBSTER and ELLINGTON, JJ., concur.

Review denied at 138 Wn.2d 1016 (1999).

---

[41]*Ballard Shipping*, 32 F.3d at 629.

[42]*See Developments in the Law—Employment Discrimination*, 109 HARV. L. REV. at 1575-77 (1996).