758 So.2d 699 (2000)
Trudy LATMAN, Nathan Latman, Rosemarie Teitler, Patricia Espinet, Rhonda Katz, Larry Katz, Joyce Kaplan, Carol Dailey, and William Dailey, individually and on behalf of all others similarly situated, Appellants,
v.
COSTA CRUISE LINES, N.V., Kloster Cruise Lines, and Carnival Cruise Lines, Appellees.
Nos. 3D99-852, 3D99-853, 3D99-854.
District Court of Appeal of Florida, Third District.
February 2, 2000.
Rehearing Denied May 31, 2000.
*700 Robert C. Gilbert, Coral Gables; Burt & Pucillo, LLP., West Palm Beach; Zwerling, Schachter & Zwerling, LLP., and Joseph Lipofsky and Robert S. Schachter, Westbury, N.Y., for appellants.
Hicks & Anderson, P.A., and Mark Hicks and Gary A. Magnarini, Miami; Mase & Gassenheimer, P.A., Miami; Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., and Joel Perwin, Miami; Paul, Weiss, Rifkind, Wharton & Garrison and Lewis R. Clayton and Steven C. Herzog, New York City; Rodriguez & Aronson, Coral Gables, for appellees.
Before COPE, GREEN and FLETCHER, JJ.
COPE, J.
In these three consolidated appeals, class action plaintiffs appeal an order denying *701 class certification. We conclude that class certification should have been granted, and reverse the order under review.

I.
The plaintiffs are cruise passengers who traveled on Carnival Cruise Lines, Costa Cruise Lines, N.V., and Kloster Cruise Lines. For the time period at issue here, the passengers' ticket price was calculated as follows: (a) cruise price + (b) port charges = (c) total ticket price. The term "port charges" was not defined.
Plaintiffs contend that the term "port charges" necessarily informs the consumer that these are "pass-through" charges paid by the cruise line to the relevant port authorities. Plaintiffs allege, and for present purposes it is accepted as true, that in fact the cruise lines passed through only a portion of the port charges to third parties, and kept the remainder for themselves. Plaintiffs alleged that this practicecollecting port charges but keeping a part of the port charges for their own accountamounted to an unfair and deceptive trade practice for purposes of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). See §§ 501.201.213, Fla. Stat. (1991).[1]
In 1996, plaintiffs filed class action complaints against the defendant-appellee cruise lines, contending that the cruise lines should repay to the passengers those amounts which were collected as "port charges" but which the cruise lines kept for themselves. The trial court denied the motion for class certification. The plaintiffs have appealed.

II.
Although not the basis of the trial court's ruling, the cruise lines' threshold argument is that the FDUTPA is completely displaced by maritime law and can have no application to a passenger cruise ticket. They point out that a passenger cruise ticket is a maritime contract, see 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 5-5, at 168 (2d ed. 1994), and say that maritime law necessarily governs to the exclusion of state law. We disagree.
The United States Supreme Court has said, "`It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system[,][b]ut this limitation still leaves the States a wide scope.'" American Dredging Co. v. Miller, 510 U.S. 443, 452, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (citation omitted). A state remedy is permissible unless it "`works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations.'" Id. at 447, 114 S.Ct. 981 (citations omitted).
Florida has a substantial interest in preventing deceptive and unfair trade practices, as thoroughly explained by the Fourth District in Renaissance Cruises, Inc. v. Glassman, 738 So.2d 436, 438-40 (Fla. 4th DCA 1999). That is especially so where, as here, these cruise lines have their respective national headquarters within the State of Florida, and the passenger tickets specify Florida as the forum for litigation. See id. at 439. We are unable to see how the enforcement of state law against deceptive and unfair trade practices would work material prejudice to the characteristic features of the general maritime law, or interfere with its proper harmony and uniformity. See American Dredging, 510 U.S. at 447, 114 S.Ct. 981; Renaissance Cruises, 738 So.2d at 439-40; see also Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 206-07, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996); Kossick v. United Fruit Co., 365 U.S. 731, 741, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); In the Matter of Nautilus *702 Motor Tanker Co., 900 F.Supp. 697, 702-05 (D.N.J.1995); F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc., Civ. A. No. 92-3900(JEI), 1994 WL 594592, at* 2-3 (D.N.J. Oct.24, 1994); Hoddevik v. Arctic Alaska Fisheries Corp., 94 Wash. App. 268, 970 P.2d 828, 834-35 (1999). We conclude that FDUTPA is applicable here and reject the cruise lines' argument to the contrary.[2]

III.
We now turn to the merits of the order denying class certification. We glean from the trial court's order that the court concluded plaintiffs had not correctly analyzed their cause of action under FDUTPA. As we interpret the order, the court reasoned that once FDUTPA was properly interpreted, individual issues of reliance and damages on the part of the class members would outweigh any issues common to the class. The court thus denied class certification.
Plaintiffs argue that it was inappropriate for the trial court to conduct any inquiry into the elements of plaintiffs' claims in deciding a motion for class certification. We disagree. Florida Rule of Civil Procedure 1.220 itself requires the court to consider the claims or defenses of the representative parties and whether they raise questions of law or fact common to the class, id. R. 1.220(a)(2); whether class claims or defenses predominate over questions of law or fact affecting only individual members of the class, id. R. 1.220(b)(3); and "all relevant facts and circumstances." Id. (emphasis added); see Dept. of Agriculture v. Varela, 732 So.2d 1146 (Fla. 3d DCA), review denied, 744 So.2d 459 (Fla.1999). In performing the required analysis under Rule 1.220, the court necessarily had to consider the law applicable to plaintiffs' claims in order to decide whether those claims were maintainable as a class action.
FDUTPA is a consumer protection statute, see § 501.202(2), Fla. Stat. (1991), which states in part that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Id. § 501.204(1). The statute creates a private cause of action for consumers: "In any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such consumer may recover actual damage, plus attorney's fees and court costs...." Id. § 501.211(2).
The cruise lines argue that FDUTPA requires the plaintiffs to demonstrate reliance and damages, and that this will necessarily entail case-by-case adjudication which is inappropriate for class consideration. The cruise lines contend that reliance and damages in most cases cannot be shown, because the ticket states (a) the cruise price, (b) the port charges, and (c) the total price. The port charges are not a later "add on," but are instead a flat amount stated in advance. Thus, the consumer knows at the outset the total price for the cruise, and can make a decision whether that total price is acceptable or not.
In these cases the named plaintiffs testified they were willing to pay, and did pay, the quoted fare for the cruises and were happy with the cruises they took. At the time they purchased their tickets, some of the cruise passengers were given the separate breakdown for the cruise charge and the port charges, while others were only given the total cruise price. The cruise lines argue that absent some indication that the consumers were influenced in *703 some way by the port charges, there is neither reliance nor resulting damage under FDUTPA. More to the point, the cruise lines argue that to determine whether there was individual reliance and resulting damage in any individual case, there must necessarily be a case-by-case inquiry, which is not suitable for a class action.
We conclude that the cruise lines read FDUTPA too narrowly and would illustrate with the following example. Suppose that a company systematically overcharges its customers on sales tax. The hypothetical company pays the state the sales tax that it owes, and then keeps the overcharge for itself.
We would not hesitate to say that an intentional overcharge of sales tax, which is kept by the company itself, is an unfair and deceptive trade practice and that the consumer must be repaid. That is so even though the consumers clearly were willing to pay the price chargedin the hypothetical example, they actually paid the sales tax overchargesnor would it make a difference that the consumers paid no attention to the sales tax amount. We think such a claim would be actionable under FDUTPA. See W.S. Badcock Corp. v. Myers, 696 So.2d 776, 778-79 (Fla. 1st DCA 1996) (class certified under FDUTPA for claim that Badcock impermissibly charged consumers a seven dollar nonfiling fee in connection with purchases of consumer goods it sold and financed); see also Execu-Tech Business Systems Inc. v. New Oji Paper Co., Ltd., 752 So.2d 582 (Fla.2000)(class action under FDUTPA to recover damages for price fixing).
The same logic applies here. For purposes of FDUTPA, we think the inquiry is how a reasonable consumer would interpret the term "port charges." The term necessarily constitutes a representation to a reasonable consumer that these are "pass-through" charges which the cruise line will pay to the relevant port authorities (and possibly others[3]).
As the Michigan Supreme Court said in a comparable context, "We hold that members of a class proceeding under the Consumer Protection Act need not individually prove reliance on the alleged misrepresentations. It is sufficient if the class can establish that a reasonable person would have relied on the representations." Dix v. American Bankers Life Assurance Co., 429 Mich. 410, 415 N.W.2d 206, 209 (1987) (footnote omitted); see Weitzel v. Barnes, 691 S.W.2d 598, 600 (Tex.1985); see also Orkin Exterminating Co. v. Federal Trade Commission, 849 F.2d 1354, 1368 (11th Cir.1988); Trans World Accounts, Inc. v. Federal Trade Commission, 594 F.2d 212, 214 (9th Cir.1979); § 501.204(2), Fla. Stat. (1991).
We therefore conclude that where the cruise line bills the passenger for port charges but keeps part of the money for itself, that is a deceptive practice under FDUTPA. Reliance and damages are sufficiently shown by the fact that the passenger parted with money for what should have been a "pass-through" port charge, but the cruise line kept the money. We note that the Fourth and Fifth District Courts of Appeal have already allowed comparable class actions to proceed in their respective jurisdictions. See Renaissance Cruises, Inc. v. Glassman, 738 So.2d at 437; Premier Cruise Lines, Ltd., v. Picaut, 746 So.2d at 1133.
*704 The cruise lines argue that they have no liability under FDUTPA because in numerous instances they sold their tickets through travel agents, and never communicated directly with the consumers. That makes no difference. Whether the travel agent is viewed as being an agent of the passenger, or the cruise line, the cruise line elected to itemize an amount on the ticket for port charges, and determined the disposition of funds. Whether the ticket was purchased through a travel agent is irrelevant to the underlying analysis.
We see no merit to the cruise lines' other objections to class certification. The orders under review must therefore be reversed and the cause remanded with directions to certify the class actions.

IV.
The cruise lines next argue that the passenger ticket contains a limitation requiring a written notice of claim to be submitted to the cruise line within 185 days, and suit to be brought within one year, after the injury complained of. They point out that only a handful of written claims were submitted complaining about the port charges. Their position is that as a prerequisite to maintaining a class action, every member of the class must submit a written claim in accordance with the limitation period contained on the ticket.
We reject this argument. Assuming that the contractual limitation period is valid and applicable, it is sufficient if the contract provision is satisfied, or compliance is excused, as to the class plaintiffs. See Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1336-37 (11th Cir. 1984) (citing, inter alia, American Pipe & Construction Co. v. Utah, 414 U.S. 538, 551, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)).
Because the trial court did not rule on any issue regarding the validity or applicability of the contractual limitation periods contained in these tickets, we decline to reach those issues here. They should be considered in the first instance by the trial court on remand.
For the reasons stated, the order under review is reversed and the cause remanded for further proceedings consistent herewith.
Reversed and remanded.
NOTES
[1] Because the plaintiffs' earliest claims are for cruises purchased in 1992, we refer to the 1991 version of FDUTPA. The statute has been subsequently amended from time to time, but not in ways material to the present analysis.
[2] The Florida Attorney General has asserted jurisdiction under FDUTPA, in an inquiry regarding the cruise lines' port charges.

In 1997 Carnival and Kloster entered into an "Assurance of Voluntary Compliance" with the Florida Attorney General which effectively limited port charges to those imposed by a governmental or quasi-governmental authority. The agreement was made without any admission that there had been any violation of law, and without prejudice to the cruise lines' position in any pending or future litigation.
[3] We need not now decide whether we agree with the Fifth District's definition of port charges contained in Premier Cruise Lines, Ltd. v. Picaut, 746 So.2d 1132 (5th DCA 1999), which includes port-side expenses associated with the port stay (regardless of whether paid to public or private third parties), while the plaintiffs contend that the term "port charges" means only those charges that are paid to a governmental or quasi-governmental port authority.

We do not need to resolve that issue at this time because under either definition, the term "port charges" indicates to a reasonable consumer that they are payments to third persons, not payments which are to be kept by the cruise lines themselves.