BETH BLOOM, UNITED STATES DISTRICT JUDGE
THIS CAUSE is before the Court upon Plaintiff's Motion for Partial Summary Judgment. See ECF No. [44] (the "Motion"). The Court has reviewed the Motion, all supporting and opposing submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Plaintiff's Motion is granted in part and denied in part.
*1318 I. BACKGROUND[1]
This dispute stems from the sale of a used car to Plaintiff by Defendant, a used car dealer. In February 2017, Plaintiff began searching for a car to purchase for his own personal use. See ECF No. [45], at ¶¶ 5, 19. Plaintiff came across a used 2015 Infiniti Q50 Sport being advertised on Defendant's website for $27,977. See Id. at ¶¶ 6-7. The online advertisement contained certain representations by Defendant, including that: Defendant has "full-service garages [that] thoroughly inspect and service each new arrival"; each new arrival is "sent to [Defendant's] detail departments to be meticulously cleaned"; the 2015 Infiniti is a "High Quality Luxury Car"; and a "[f]ull inspection [was] performed by [Defendant's] technicians" on the 2015 Infiniti. See Id. at ¶ 8; ECF No. [44-2]. Based on these representations, Plaintiff contacted Defendant to see the 2015 Infiniti. See ECF No. [45], at ¶ 9. On February 15, 2017, an employee of Defendant emailed Plaintiff informing him that the 2015 Infiniti had a "clean car fax" and asking when Plaintiff wanted to test drive the car. See Id. at ¶ 10. After Plaintiff pointed out to the employee that he had not received a car fax for the vehicle, the employee replied and again told Plaintiff that the car fax was clean and that the 2015 Infiniti had no accidents. See Id. at ¶¶ 11-12.
On February 18, 2017, Plaintiff went to Defendant's auto dealership and met with Mr. Jay Zelaya, one of Defendant's salesmen. See Id. at ¶¶ 13, 15. Mr. Zelaya represented that the 2015 Infiniti was in excellent condition and that it had been thoroughly inspected by Defendant's service department. See Id. at ¶ 17. According to Plaintiff, however, Mr. Zelaya did not disclose that Defendant had performed repairs on the 2015 Infiniti, that the 2015 Infiniti was damaged in any way, or that the 2015 Infiniti had been in any accidents. See Id. at ¶ 16.
Plaintiff proceeded to purchase and finance the 2015 Infiniti. See Id. at ¶ 20. Prior to visiting Defendant, Plaintiff obtained pre-approved financing from Tropical Financial Credit Union "for 1.99% for a used car with mileage under 75,000 and an LTV of 89% or less." Id. at ¶ 14. The 2015 Infiniti met these requirements. Id. Nonetheless, Defendant told Plaintiff that if he chose to use his own financing, he would be charged a $750 "Draft fee." See Id. at ¶ 21. Plaintiff chose not to use his own financing.
Rather than paying the $27,977 price advertised online, Plaintiff ultimately purchased the 2015 Infiniti for $32,912, with a 3.98% interest rate through JPMorgan Chase Bank. See Id. at ¶ 22. In connection with the purchase, Defendant prepared a Retail Purchase Agreement ("RPA"). See Id. at ¶ 23. The RPA, which itemized the *1319 various costs and prices, included a $699 "Pre-Delivery Service Charge Dealer Fee/Loan Processing Fee" and a $47.95 "DMV E-File" fee. See Id. at ¶ 24; ECF No. [44-3]. Plaintiff assumed that the DMV E-File fee was a "required fee that was paid to the Department of Motor Vehicles in order to properly title my vehicle." ECF No. [45], at ¶ 24.
Defendant also prepared a Retail Installment Sale Contract ("RISC") that provided Plaintiff with a breakdown of the financing charges. See Id. at ¶ 25; ECF No. [44-4]. The total amount financed for the 2015 Infiniti (the amount of credit provided to Plaintiff) was $24,551.49. See ECF No. [44-4]. As part of the financing for the vehicle, Defendant traded in his 2012 Infiniti. See ECF No. [45], at ¶ 25. Plaintiff estimated that he owed $10,700 on the 2012 Infiniti. See ECF No. [44-1], at 104, 108. At some point, Mr. Zelaya called the lienholder, Capital One, and confirmed that the actual pay-off amount for Plaintiff's 2012 Infiniti was $10,317, and that the pay-off amount was good until February 28, 2017.[2] See ECF No. [44-1], at 108, 114; ECF No. [44-8]. Nevertheless, the estimated pay-off figure of $10,700 was included in the RISC and was used to calculate the total amount financed for the 2015 Infiniti. See ECF No. [44-4].
On his way home after purchasing the vehicle, Plaintiff attempted to turn on the fog lights. See ECF No. [45], at ¶ 26. The fog lights, however, did not function properly. See Id. Plaintiff proceeded to have the vehicle inspected at an Infiniti dealership, where it was discovered that the 2015 Infiniti had been painted following a repair, the bumper was being held together by a plastic zip tie, and there were missing pieces of the undercarriage that had been previously ripped off. See ECF No. [45], at ¶ 26. The total cost of the repairs was estimated to exceed $5,000. See Id.
II. LEGAL STANDARD
Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; see also Fed. R. Civ. Pro. 56(a). The parties may support their positions by citation to the record, including, inter alia , depositions, documents, affidavits, or declarations. See Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." Miccosukee Tribe of Indians v. United States , 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). A fact is material if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson , 477 U.S. at 247-48, 106 S.Ct. 2505 ).
The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. See *1320 Shiver v. Chertoff , 549 F.3d 1342, 1343 (11th Cir. 2008). A movant must present evidence demonstrating that it can establish the basic elements of his claim. Celotex , 477 U.S. at 322, 106 S.Ct. 2548. Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial. Id. at 324, 106 S.Ct. 2548 ; see also Fed. R. Civ. Pro. 56(c)(1). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. See Adickes v. S. H. Kress & Co. , 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis added). After the nonmoving party has responded to the motion for summary judgment, a court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Thus, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " Tolan v. Cotton , --- U.S. ----, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (per curiam) (quoting Anderson , 477 U.S. at 249, 106 S.Ct. 2505 ) (emphasis added).
III. DISCUSSION
A. TILA Claim
Plaintiff contends that he is entitled to judgment as a matter of law on his TILA claim because the financed amount disclosed by Defendant on the RISC was inaccurate. The Court agrees with Plaintiff.
TILA is designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601 ; Mourning v. Family Publ'ns Serv., Inc. , 411 U.S. 356, 364-65, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). Because it is a consumer statute, TILA "is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent." Ellis v. Gen. Motors Acceptance Corp. , 160 F.3d 703, 707 (11th Cir. 1998). Courts interpreting TILA "defer to the regulations developed by the Federal Reserve Board under the broad authority granted to it by Congress under the Act." Cannon v. Metro Ford, Inc. , 242 F.Supp.2d 1322, 1328 (S.D. Fla. 2002) (citing Mourning , 411 U.S. at 369-71, 93 S.Ct. 1652 ).
Pursuant to its grant of authority, the Federal Reserve Board adopted Regulation Z, 12 C.F.R. § 226.1 et seq. Both TILA and Regulation Z require that a creditor in a closed-end transaction make disclosures to the consumer of the following items: the identity of the creditor, the amount financed, the annual percentage rate, the total of payments, and the total sale price.[3] 15 U.S.C. § 1638(a) ; 12 C.F.R. § 226.18. TILA requires that a creditor make the required disclosures "before the credit is extended." 15 U.S.C. § 1638(b). Regulation Z provides that "[t]he creditor shall make disclosures before consummation of the transaction." 12 C.F.R. § 226.17(b). "Consummation" is defined as the time "the consumer becomes contractually *1321 obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). The determination of whether or when a party becomes "contractually obligated" is a question of state law. See Cannon, 242 F.Supp.2d at 1328. Regulation Z also provides that "[t]he creditor shall make the disclosures ... clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1).
It is undisputed that on February 18, 2017, the parties completed the sale of the 2015 Infiniti. As part of the sale, Plaintiff traded in his 2012 Infiniti, which Defendant agreed to pay off. Plaintiff provided that the estimated pay-off on the 2012 Infiniti was $10,700. At some point from February 18 to the 23, however, Mr. Zelaya called Capital One, the lienholder on the 2012 Infiniti, and confirmed that the pay-off amount for the 2012 Infiniti was $10,317 and that the $10,317 pay-off amount was good until February 28, 2017. Nevertheless, the $10,700 estimate was included as the "Balance Owed on Trade-In" figure in the RPA, and as the "Payoff Made by Seller" figure in the RISC. See ECF Nos. [44-3], [44-4]. This resulted in an "inflated" unpaid balance and amount financed price of $24,551.49. See Id. Plaintiff, who signed the RISC containing the inflated amount financed figure on February 18, 2017, thus bound himself to paying more interest over the life of the RISC. See Bragg v. Bill Heard Chevrolet, Inc. , 374 F.3d 1060, 1066 (11th Cir. 2004) ("[T]he point at which the consumer ... commits himself ... to the purchase of credit, without regard for the degree of commitment of the lender ... [is the point at which] the consumer becomes vulnerable to actual damage from the lender's inadequate or deceptive disclosures, for at this time he or she can be contractually bound to the terms of the lending contract at the option of the lender."). Plaintiff never received a refund for the difference between the estimate and the actual pay-off amount.
To be sure, Regulation Z provides that: "If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate." 12 C.F.R. § 1026.17(c)(2)(i). The record is clear, however, that the amount financed was not "based on the best information reasonably available at the time the disclosure [was] provided." Id. In light of the fact that Mr. Zelaya called Capital One relatively quickly after the sale was completed, it is clear that Mr. Zelaya could have called the bank prior to using an incorrect pay-off amount to calculate the amount financed, and that it would have been reasonable for him to do so. Thus, on February 18, 2017, the day Plaintiff "consummated" the purchase of the 2015 Infiniti, Defendant disclosed an inaccurate amount financed figure to Plaintiff even though the correct information was reasonably available.
In response, Defendant argues that there is an issue of material fact because "the amount Plaintiff is alleging that Defendant overstated was actually the amount Plaintiff suggested he owed on the trade-in vehicle." ECF No. [54], at 6. This fact, however, is not in dispute.
Defendant next argues that once a dealership makes estimates as to the amount owed, "then it is up to the creditor bank to payoff said vehicle and reimburse Plaintiff of any surplus. Plaintiff has the option of obtaining said information from the crediting bank to determine whether an actual pay-off was submitted.... Additionally, the responsibility to forward any surplus is the responsibility of the crediting bank and *1322 not that of Defendants ...." Id. Defendant, however, provides this statement without any reference to facts, evidence in the record, or relevant legal authority to support it.[4] As the Eleventh Circuit has stated, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England , 432 F.3d 1321, 1326 (11th Cir. 2005).
There are no genuine issues of material fact surrounding Defendant's inaccurate disclosure of the amount financed, and Plaintiff is entitled to judgment as a matter of law. Plaintiff is thus entitled to summary judgment in regards to his TILA claim.
B. FDUTPA Claim
Plaintiff alleges that Defendant violated FDUTPA as a matter of law because it required Plaintiff to pay fees omitted from the advertised price; the DMV E-File fee was not "fully" disclosed; and Defendant overcharged Plaintiff for the titling and registering of the 2015 Infiniti and did not refund the overage. See ECF No. [44], at 12-16. The Court addresses these arguments in turn.
FDUTPA was enacted "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). The statute permits parties to recover actual damages as well as reasonable attorney's fees and costs. See Fla. Stat. § 501.2105 ; see also Democratic Republic of Congo v. Air Capital Grp., LLC , 614 Fed.Appx. 460, 471 (11th Cir. 2015). "In order to succeed in a claim under the FDUTPA, a plaintiff must prove: '(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.' " Double AA Int'l Inv. Grp., Inc. v. Swire Pac. Holdings, Inc. , 674 F.Supp.2d 1344, 1353 (S.D. Fla. 2009) (quoting Rollins, Inc. v. Butland , 951 So.2d 860, 869 (Fla. 2d DCA 2006) ). Although FDUTPA does not explicitly define the term "deception," the provisions of the act are to be "construed liberally." Fla. Stat. § 501.202 ; see also Alhassid v. Bank of Am., N.A. , No. 14-20484-CIV, 2015 WL 11110557, at *9 (S.D. Fla. Nov. 4, 2015).
Unlawful acts and practices under FDUTPA include "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Courts have determined that a deception under FDUTPA occurs when there is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." Zlotnick v. Premier Sales Group , 480 F.3d 1281, 1284 (11th Cir. 2007) (citation and quotation omitted); see also Rollins , 951 So.2d at 869 ("A deceptive practice is one that is 'likely to mislead' consumers."). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.' " Zlotnick , 480 F.3d at 1284 (quoting Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen. , 761 So.2d 1256, 1263 (Fla. 3d DCA 2000) ). Reliance is not required for causation under FDUTPA: "When addressing a deceptive or unfair trade practice claim, the issue is not *1323 whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." Gold Coast Racing, Inc. v. The Home Depot U.S.A., Inc. , No. 05-61931-CIV, 2006 WL 4579688, at *2 (S.D. Fla. Feb. 6, 2006).
1. Fla. Stat. § 501.976(16).
Plaintiff first alleges that Defendant violated FDUTPA because the price advertised online for the 2015 Infiniti did not include the $699 Pre-Delivery Service Charge Dealer Fee/Loan Processing fee ("dealer fee") and the $47.95 DMV E-File fee. Under FDUTPA's dealer provisions, the "advertised price must include all fees or charges that the customer must pay, including ... dealer preparation charge .... State and local taxes, tags, registration fees, and title fees ... need not be disclosed in the advertisement." Fla. Stat. § 501.976(16).
In his affidavit in support of the Motion, Plaintiff states that the online advertisement represented "that the 'Cash Price' included all fees and charges I was required to pay." See ECF No. [45], at ¶ 8. In his deposition, however, Mr. Viquez, Defendant's General Manager, testified that the online advertisement clearly stated that the internet price did not include the dealer or DMV E-File fee: "And if you look at the-If you scroll a little bit down, if we were on the website [containing the ad for the 2015 Infiniti], you would scroll down to the bottom and it tells you prices do not include dealer fee, applicable sales tax, title, registration, and a $47.95 private tag agency fee." ECF No. [44-1], at 99. The advertisement for the 2015 Infiniti has not been produced by the parties.[5] Accordingly, a genuine issue of material fact exists as to whether Defendant accurately disclosed the price of the 2015 Infiniti in its online advertisement.[6]
2. Fla. Stat. § 501.976(18)
Plaintiff next argues that Defendant violated FDUPTA because it did not make the necessary disclosures under Fla. Stat. § 501.976(18) in regards to the $47.95 DMV E-File fee. Under this provision:
It is an unfair or deceptive act or practice, actionable under the Florida Deceptive and Unfair Trade Practices Act, for a dealer to .... Charge a customer for *1324 any predelivery service without having printed on all documents that include a line item for predelivery service the following disclosure: "This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale."
Fla. Stat. § 501.976(18). Mr. Viquez testified that the DMV E-File fee is: "a documentation fee to do the tag work for [the customer]," ECF No. [44-1], at 93; a charge for "the handling of doing tag work," Id. ; and "for shipping and handling of the tag," Id. at 99. While Mr. Viquez was not sure what portion of the DMV E-File fee gets disbursed to the tag agency or how it is disbursed, see Id. at 93-94, 100, it is likely that the DMV E-File fee was a charge representing a cost or profit to Defendant for a service relating to the sale of the 2015 Infiniti.[7] See Fla. Stat. § 501.976(18).
The RPA is the only document in the record that includes a line item for the DMV E-File fee. See ECF No. [44-3]. The RPA, however, does not contain the disclosure as mandated by Fla. Stat. § 501.976(18). See Id. Because Defendant charged Plaintiff a $47.95 fee for the handling and shipping of the title and registration of the 2015 Infiniti, but failed to include the required disclosure in the line item for the fee in the RPA, Defendant has violated Fla. Stat. § 501.976(18) as a matter of law.[8]
3. Overcharge of title and registration fees.
Finally, Plaintiff alleges that Defendant violated FDUPTA when it overcharged Plaintiff for titling and registering the 2015 Infiniti and failing to refund the difference. The RPA shows that Plaintiff was charged the $47.95 DMV E-File fee and $250 for "registration and titling fees."[9] See ECF No. [44-3]. Record evidence, however, demonstrates that Defendant paid a tag agency only $82.35 for the titling and registration of the 2015 Infiniti. See ECF No. [44-6]. In his affidavit in support of the Motion, Plaintiff claims to never have received a refund for the difference. See ECF No. [45], at 4. Mr. Viquez stated in his deposition that "the difference is also refunded to the customer," yet he could not say with any certainty whether Plaintiff in fact received a refund. See ECF No. [44-1]. at 115.
The Court finds that a deception or unfair practice under FDUTPA occurred. In Latman v. Costa Cruise Lines, N.V. , 758 So.2d 699, 703 (Fla. 3d DCA 2000), Florida's Third District Court of Appeal provided the following analogy when considering whether to certify a class in a FDUTPA action brought by cruise ship passengers against a cruise line:
Suppose that a company systematically overcharges its customers on sales tax.
*1325 The hypothetical company pays the state the sales tax that it owes, and then keeps the overcharge for itself. We would not hesitate to say that an intentional overcharge of sales tax, which is kept by the company itself, is an unfair and deceptive trade practice and that the consumer must be repaid. That is so even though the consumers clearly were willing to pay the price charged-in the hypothetical example, they actually paid the sales tax overcharges-nor would it make a difference that the consumers paid no attention to the sales tax amount. We think such a claim would be actionable under FDUTPA.
The Third District Court of Appeal then concluded that "where the cruise line bills the passenger for port charges but keeps part of the money for itself, that is a deceptive practice under FDUTPA," and that "[r]eliance and damages [were] sufficiently shown by the fact that the passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money." Id.
The same force of logic applies here, where Plaintiff was charged "DMV E-File" and "registration and titling" fees-charges that a reasonable consumer in the same circumstances would likely think were mandated by and forwarded to the state.[10] See Zlotnick , 480 F.3d at 1284 ("[D]eception under FDUTPA occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."). Defendant then kept the difference between the fees charged and the amount actually paid to register and title the 2015 Infiniti rather than refund the difference to Plaintiff. In light of the liberal construction afforded to FDUTPA's provisions, the Court finds that this act by Defendant was likely to, and did in fact, mislead Plaintiff, resulting in actual damages suffered by Plaintiff due to the overage. See Gold Coast Racing, Inc. , 2006 WL 4579688, at *2 ("When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.").
C. FCCPA Claim
Plaintiff's final claims arise under the FCCPA. The FCCPA is Florida's consumer protection statute that "was enacted as a means of regulating the activities of consumer collection agencies within the state." LeBlanc v. Unifund CCR Partners , 601 F.3d 1185, 1190 (11th Cir. 2010) (internal quotation and citation omitted). "When viewed in its entirety, the purpose and intent of the [FCCPA] ... is to eliminate abusive and harassing tactics in the collection of debts." Brandt v. I.C. System, Inc. , No. 8:09-cv-126-T-26MAP, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010). "Section 559.72, entitled 'Prohibited practices generally,' lists [nineteen] debt collection actions that violate the FCCPA." Kaplan v. Assetcare, Inc. , 88 F.Supp.2d 1355, 1362 (S.D. Fla. 2000).
In this case, Plaintiff claims that Defendant has violated Section 559.72(9), which states: "In collecting consumer debts, no person shall .... claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." With *1326 respect to determining what constitutes a misrepresentation of a legal right under Section 559.72(9), the Court "must refer to other statutes that establish the legitimacy of a debt and define legal rights." See Cliff v. Payco Gen. American Credits, Inc. , 363 F.3d 1113, 1126 (11th Cir. 2004). To establish a violation under Section 559.72(9) of the FCCPA, "it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist." Daniel v. Select Portfolio Servicing, LLC , 159 F.Supp.3d 1333, 1336 (S.D. Fla. 2016).
Plaintiff asserts that Defendant violated the FCCPA as a result of its failure to comply with FDUTPA. Specifically, Plaintiff alleges that Defendant asserted non-existent legal rights (1) by collecting the dealer and DMV E-File fees "after it failed to include them in the Infiniti's advertised price" and (2) for knowingly failing to "refund the amount it overcharged [Plaintiff] for titling and registering the Infiniti and failing to 'fully' disclose the $47.95 'DMV E-File' fee." ECF No. [44], at 18-19.
Regarding Defendant's first contention, the Court has declined to enter summary judgment on Plaintiff's FDUTPA claim-the predicate to the FCCPA claim-regarding Defendant's failure to include the dealer and DMV E-File fees in the internet price due to the existence of a genuine issue of material fact concerning what price information was disclosed in the advertisement for the 2015 Infiniti. Thus, the Court declines to enter summary judgment on the corresponding FCCPA violation.
The Court has found, however, that Plaintiff did not receive a refund for the amount that he was overcharged for the titling and registering of the 2015 Infiniti, and that Defendant failed to provide the disclosure under Fla. Stat. § 501.976(18) when including the DMV E-File fee in the RPA. In order to demonstrate that Defendant did this knowingly, Plaintiff submitted the complaint in a 2015 lawsuit involving Defendant and containing similar allegations and counts as Plaintiff's current action.[11] The Court finds that the complaint, at a minimum, demonstrates that Defendant was aware of the same exact provisions and statutes of which the Court has now found it to be in violation.[12]
As there are no genuine issues of material fact in relation to Defendant's knowingly failing to "refund the amount it overcharged [Plaintiff] for titling and registering the Infiniti and failing to 'fully' disclose the $47.95 'DMV E-File' fee," the Court finds that Plaintiff is entitled to summary judgment on these two FCCPA claims.
D. Defendant's Affirmative Defenses.
Plaintiff seeks an entry of summary judgment on both of Defendant's affirmative defenses to his claims. Defendant has not provided any arguments in response. Defendant's first affirmative defense is that Plaintiff's causes of action fail to set forth facts sufficient to state claims upon which relief may be granted. See ECF No. [9], at 7. Plaintiff has, at the very least, presented a prima facie case for his claims *1327 under TILA, FDUPTA, and the FCCPA. Plaintiff is entitled to summary judgment as to Defendant's first affirmative defense.
Defendant's second affirmative defense is that "Defendant and its agents and representatives are protected by the 'bona fide error' defense pursuant to 15 U.S.C. § 1692k, since such actions or inactions, if they occurred, were not intentional and resulted from a bona fide error notwithstanding Defendant's maintenance of procedures reasonably adapted to avoid such errors." Id. However, Plaintiff correctly points out that the bona fide error defense pursuant 15 U.S.C. § 1692k is a defense to claims brought under the federal Fair Debt Collection Practices Act. None of Plaintiff's causes of action have been brought under that federal statute. Accordingly, Plaintiff is also entitled to summary judgment as to the second affirmative defense.
IV. CONCLUSION
A genuine issue of material fact exists regarding the contents and representations made by Defendant in its online advertisement of the price of the 2015 Infiniti purchased by Plaintiff. Thus, summary judgment is not proper as it pertains to Defendant's alleged violation of Fla. Stat. § 501.976(16), along with the corresponding FCCPA claim. Plaintiff is, however, entitled to summary judgment on his claim under TILA, his remaining claims under FDUTPA and the FCCPA, and Defendant's affirmative defenses. Therefore it is
ORDERED AND ADJUDGED that Plaintiff's Motion for Partial Summary Judgment, ECF No. [44] , is GRANTED in part and DENIED in part.
DONE AND ORDERED in Miami, Florida, this 22nd day of December, 2017.

The Court notes that the parties have failed to comply with the Court's Local Rule 56.1, which mandates that a motion for summary judgment and its opposition be accompanied by a statement of material facts "as to which it is contended that there does not exist a genuine issue to be tried or there does exist a genuine issue to be tried, respectively." S.D. Fla. L.R. 56.1(a). Plaintiff has submitted an affidavit in support of his Motion. See ECF No. [45]. Nonetheless, Plaintiff's affidavit is not "supported by specific references to the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." S.D. Fla. L.R. 7.1(a)(2). Defendant did not file a separate statement of undisputed facts. Thus, the Court sets forth the facts insofar as they are supported by evidence in the record. The Court also notes that, pursuant to Federal Rule of Civil Procedure 56(e), if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may "consider the fact undisputed for purposes of the motion."

It is unclear from the record exactly when Mr. Zelaya called Capital One. The "Authorization for Payoff" form prepared by Mr. Zelaya is signed by Plaintiff and dated February 18, 2017. See ECF No. [44-8]. Record evidence, however, suggests that Mr. Zelaya filled in the details on the payoff authorization form after Plaintiff signed it. See ECF No. [44-1], at 113-14. On February 23, 2017, one of Defendant's employees called Capital One a second time, confirming that the pay-off amount, which also included a per diem fee that the bank charged until it received the pay-off, was $10,321. See ECF No. [44-1], at 102-03. Thus, the record reflects that Mr. Zelaya called Capital One sometime between February 18, 2017, and February 23, 2017.

The amount financed is calculated by: (1) determining the principal loan amount or the cash price (subtracting any down payment); (2) adding any other amounts that are financed by the creditor and are not part of the finance charge; and (3) subtracting any prepaid finance charge. See 12 C.F.R. § 226.18(b).

This statement is also contradicted by the record. In his deposition testimony, Mr. Viquez, Defendant's General Manager, stated that "the difference is returned to the customer" and that Defendant "should" have a check that would have been issued to Plaintiff. ECF No. [44-1], at 112.

Plaintiff submitted two pages of the advertisement. See ECF No. [44-2]. These pages, however, do not show the advertised price for the 2015 Infiniti or Defendant's alleged disclosure of the fees not included in the advertised price.

Plaintiff argues that Defendant has committed a per se violation of FDUPTA because the advertised price failed to include the dealer and DMV E-File fees despite being "charges that the customer must pay" (in violation of Fla. Stat. § 501.976(16) ). Yet assuming without deciding that Defendant's failure to include the dealer and DMV E-File fees in the internet price is a per se violation-even though Defendant may have explicitly disclosed that the fees were not included in the price, therefore removing any deception-Plaintiff must still show causation and actual damages. Without knowing the complete content of the advertisement, the Court cannot determine what, if any, actual damages Plaintiff suffered given that, by his own admission, he did not seem to have any intention of paying the cash price for the 2015 Infiniti. Put differently, if Defendant is right and the advertisement clearly states that the internet price (1) was for cash purchases only and (2) did not include "the dealer or DMV E-File fee," it is unclear what actual damages Plaintiff incurred as it would not have been reasonable for Plaintiff to expect to purchase the 2015 Infiniti for the lower internet price when Plaintiff, who obtained pre-approved financing prior to visiting the dealership, was not going to purchase the vehicle with cash. Summary judgment is thus not appropriate with the record currently before the Court.

Mr. Viquez did confirm that the DMV does not get paid any portion of the DMV E-File fee. See ECF No. [44-1], at 100.

Plaintiff also argues that Defendant per se violated FDUPTA by violating Fla. Admin. Code 15C-16.007(2)(d), which deals with entities authorized to process certain title and registration transactions. Under this code, an authorized entity who "charges a fee to the customer for use of the electronic filing system ("EFS") in a title or registration transaction" must disclose the fee "separately and in a clear and conspicuous manner in the sales agreement along with other options for titling and registration." Fla. Admin. Code 15C-16.012(5). There is no evidence, however, that Defendant used the EFS in processing the 2015 Infiniti's title and registration, or that Defendant charged Plaintiff for its use of the EFS.

The RISC also shows that Plaintiff was charged $250 for "Government Certificate of Title Fees." See ECF No. [44-4].

Indeed, Plaintiff "assumed that [the DMV E-File fee] was a required fee that was paid to the Department of Motor Vehicles in order to properly title [the] vehicle." ECF No. [45], at 3.

Plaintiff submitted the complaint pursuant to Federal Rule of Evidence 404(b), which allows for evidence of a crime, wrong, or other act to be used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The complaint in the previous case, for example, also alleged violations of FDUTPA for overcharging titling and registration fees and failing to properly disclose under Fla. Stat. § 501.976(18). See ECF No. [44-10], at 25.