24 P.3d 447 (2001)
106 Wash.App. 406
Michael PAUL, David Ashton, Bjorn Bergvinsson, Jeff Heimkes, Christopher Jolibois, Jurica Kezic, Michael Mueller, Brent Reid, Kenneth Smith, Kacey Patricia Hawker, as personal representative of the estate of Mark Hawker, Dan Hobbs, and Brian Schultz, Respondents,
v.
ALL ALASKAN SEAFOODS, INC., AAS-DMP Management Limited Partnership, Kodiak Marine Protein, Inc., Lloyd Cannon and Patricia Cannon and their marital community, and Robert F. Wood and Carolyn Wood and their marital community, Appellants.
No. 45388-2-I.
Court of Appeals of Washington, Division 1.
May 29, 2001.
*449 Jonathan Meier and Tom Montgomery, Montgomery & Scrap, Seattle, for Appellants.
Bradley Bagshaw, Helsell, Fetterman, Martin, Todd & Hokanson and Scott Collins, Seattle, for Respondents.

*448 PUBLISHED OPINION (IN PART)
ELLINGTON, J.
We must decide whether federal maritime law preempts the Washington remedy for willful withholding of fishermen's wages. We hold it does not, and affirm the award of double wages under the state statute. We also affirm the trial court's award of attorney fees and prejudgment interest.

FACTS
All Alaskan Seafoods, Inc. and Dalmoreproduct, a Russian fishing company, agreed to fish for crab on the high seas and in the territorial waters of the Russian Federation. The parties created a joint venture, AAS DMP Management Limited Partnership. Dalmoreproduct contributed its 9,000 metric ton crab quota and Russian crewmembers, and All Alaskan contributed financial resources, vessels, American crew, and access to markets. The joint venturers agreed they would pay the crew 50 cents per pound of unprocessed crab.
Arrangements for the venture varied somewhat from practices common in the Alaska fishing industry. The venture consisted of 10 catcher boats and a processing barge and sold processed crab, whereas in Alaska, individual boats sell unprocessed crab. Many of the provisions in the fishermen's written contracts, however, were typical for the Alaska fishery. The contracts provided the fishermen were to be paid a specific percentage of gross receipts. No mention was made of a per-pound rate of 50 cents. The contracts contained an integration clause:

*450 This agreement constitutes the entire agreement between the parties. All prior arrangements and negotiations between the parties are hereby superseded and the agreement between the parties is as stated solely in this document. Any changes to this agreement MUST be in writing by the master and/or owner of this vessel.[1]
AAS-DMP hired the 12 individuals who brought this action. They are 10 seamen who reside (or at all relevant times resided) in Washington, one Oregon resident, and a resident of Montana (collectively, "the fishermen"). Each was hired under the contract terms described above. Most of the crab was processed and sold for $3.50 to $14.50 per pound, although eight deliveries of unprocessed crab were also sold for $3.62 to $5.73 per pound. AAS DMP paid the fishermen's share at 50 cents per pound, rather than a percentage of gross receipts.
The fishermen filed this action in King County Superior Court. They asserted common law seamen's claims for unpaid wages, and also sought state statutory remedies for willful withholding of wages, including double wages, attorney fees, and costs. Defendants included AAS DMP, a Washington limited partnership; All Alaskan Seafoods, Inc., an Alaska corporation; and Kodiak Marine Protein, Inc., an Alaska corporation, all of which have their principal places of business in Seattle. Also named were individual defendants who reside in the state of Washington. (We refer to the defendants collectively as "All Alaskan.")
Summary judgment on grounds of federal preemption was denied. The jury found in favor of the fishermen, and awarded wages ranging from $44,709 to $283,057.[2] Based upon the jury's finding that the wages were willfully withheld, the court doubled the awards under RCW 49.52.070. The court also awarded attorney fees and prejudgment interest.

DISCUSSION
State courts have jurisdiction to consider actions for fishermen's wages under the "savings to suitors" clause: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."[3] The savings clause means that state courts may adjudicate maritime cases, and that each state is free to adopt "such remedies... as it sees fit," so long as such remedies "conform to governing federal maritime standards."[4]
The test for determining the validity of state legislation affecting maritime commerce was originally set forth in 1917 in Southern Pacific Co. v. Jensen,[5] and recently reaffirmed in American Dredging Co. v. Miller.[6] State legislation applies to maritime commerce unless "it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations."[7]

I. Double Wages

The principal issue in this case is whether the Washington statutes providing a doubling *451 penalty for willful withholding of wages are preempted by maritime law. Washington statutes provide that an employer who, willfully and with intent to deprive the employee of any part of his wage, pays the employee less than is due under a contract, is guilty of a misdemeanor[8] and liable "to judgment for twice the amount of the wages," together with costs and attorney fees.[9]
We must first determine whether Washington's double wage provision conflicts with a federal statute. If not, we must consider whether as applied in this case, the provision works material prejudice to the "characteristic features of the general maritime law," or if its application unduly interferes with the harmony and uniformity of the admiralty system.[10] If so, maritime law preempts the state remedy. We review the preemption question de novo.[11]
All Alaskan alleges Washington's double wage provision conflicts with the federal statutory scheme relating to fishermen's wage claims. This argument rests upon a statute that applies to seamen, but not to fishermen. Under 46 U.S.C. § 10313(g), a seaman may recover double wages for each day that payment of wages is delayed without sufficient cause. The purpose of the provision is remedial, but "Congress has chosen to secure that purpose through the use of potentially punitive sanctions designed to deter negligent or arbitrary delays in payment."[12]
The fishermen here have no claim under 46 U.S.C. § 10313(g), because Congress specifically exempted them from the statute: "This chapter does not apply to a vessel on which the seamen are entitled by custom or agreement to share in the profit or result of a voyage."[13] All Alaskan argues that this exemption amounts to congressional articulation of a federal policy against wage penalties for fishermen.
We do not agree. First, the exemption was codified in 1878[14] and we find no legislative history supporting All Alaskan's contention.
Second, logic does not support All Alaskan's argument. In Sewell v. M/V Point Barrow,[15] defendants contended that another section of the same statute, exempting seamen on coastwise voyages from the double wage remedy otherwise available to seamen, evidenced a congressional intent that coastwise seamen not benefit from an Alaska statute providing a penalty for withheld wages.[16] The court found the state statute compatible with federal statutes governing seamen's wage claims, and concluded that the exemption *452 of coastwise seamen simply recognized the impracticality of applying rules for seamen generally to seamen on coastwise voyages, because their employment conditions differ.[17] Similarly, fishermen's wages and customs are "peculiar to their business."[18] The exemption of fishermen from the seaman's federal doubling remedy merely recognizes this difference.[19]
Under the federal statutes governing fishermen's recovery of wages and shares, the master and owner of a vessel must execute a written agreement with each seaman, setting forth the agreed wages, shares, or other compensation arrangement peculiar to the fishery.[20] The vessel is liable in rem for the highest value alleged for the shares.[21] Congress explicitly preserved other remedies: "This section does not affect a common law right of a seaman to bring an action to recover the seaman's share of the fish or proceeds."[22]
Common law remedies are simply in personam remedies, including statutory remedies:

The "right of a common-law remedy," so saved to suitors ... include[s] all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved. It includes remedies in pais, as well as proceedings in court; judicial remedies conferred by statute, as well as those existing at the common law; remedies in equity, as well as those enforceable in a court of law.[23]
There is no conflict between the double wage provision of RCW 49.52.070 and the federal statutory scheme governing fishermen's wages.
State law may still be preempted, however, if its application "`works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of maritime law in its international and interstate relations.'"[24] A characteristic feature of general maritime law is one that originates in or has exclusive application in admiralty.[25]
Despite the "long history of awarding punitive damages in maritime claims,"[26] All Alaskan asserts that maritime law uniformly prohibits punitive damages in contract cases. *453 For this proposition All Alaskan relies on Thyssen, Inc. v. S.S. Fortune Star,[27] in which cargo was damaged after it was stowed on the deck, rather than in the hold. The district court awarded punitive damages because the removal of the cargo from below deck was an unreasonable deviation, a willful act in derogation of a contractual obligation, and worked a fraud upon the owner of the cargo. The Second Circuit reviewed the general rule against punitive damages in contract cases, found no applicable exception, and held plaintiffs were not entitled to punitive damages: "[T]he rule against punitive damages for breach of contract ... is as much a part of the general maritime law as is the rule allowing such damages in actions for tort."[28]
We find Thyssen unhelpful for several reasons. First, the Thyssen court's application of the general rule against punitive damages in contract cases does not make it an integral part of maritime law for purposes of preemption analysis. The rule neither originates in admiralty nor has exclusive application there, as evidenced by the sources upon which the Thyssen court relied for its pronouncement of a purported maritime rule.[29] Second, even if the general rule is considered a characteristic feature of maritime law, it does not prevent punitive damages authorized by statuteas, for example, the seamen's double wage remedy under 46 U.S.C. § 10313. Finally, the dispute in Thyssen concerned salt water damage to cargo. It did not involve wards of admiralty to whom the law of admiralty holds a "special solicitude."[30] The Thyssen court itself recognized that punitive damages have been awarded for willful withholding of maintenance and cure,[31] because those rights differ from "rights normally classified as contractual."[32] While the dispute here is grounded in contract, it implicates the court's special solicitude to wards of admiralty.
All Alaskan also points to the Ninth Circuit's holding in Glynn v. Roy Al Boat Management Corp.,[33] that punitive damages are not recoverable where a ship owner willfully and persistently fails to investigate a seaman's claim for maintenance and cure. All Alaskan argues that if punitive damages were permitted for wrongful withholding of wages, but not for willful failure to pay maintenance and cure, the result would be a "strange disuniformity" in maritime law.[34] But disuniformity is already present. Punitive damages are usually not available in actions for maintenance and cure (although this rule is itself not uniform).[35] On the other hand, high seas seamen are always entitled to double damages when their wages are withheld "without sufficient cause."[36] The silence of the federal statutes as to a *454 similar remedy for fishermen contributes nothing to "uniformity," and permitting a state remedy creates no additional disuniformity.
Finally, All Alaskan asserts that "there is a serious question whether punitive damages may ever be awarded under general maritime law after the Supreme Court's decision in Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990)."[37] We disagree with All Alaskan's reading of Miles. The Miles court recognized a general maritime cause of action for the wrongful death of a seaman.[38] The Court disallowed recovery for loss of society, because a judicially created cause of action in which liability is without fault should not have a more expansive remedy than Congress allowed for death resulting from negligence.[39]Miles ensures a uniform rule applicable to all actions for wrongful death of a seaman, whether under the Death on the High Seas Act, the Jones Act, or general maritime law.[40]
All Alaskan does not explain why Miles forecloses a state statutory award of double wages. Adoption of All Alaskan's position would not result in a uniform rule, since the federal statute provides for double wages to certain seamen, and leaves others to their common law remedies.
Whether maritime harmony and uniformity will be disrupted depends on a balancing of the federal and state interests involved.[41] All Alaskan makes several arguments in this regard. First, it argues Washington state's interests are minimal here because the venture was international, the work was conducted on the high seas, and while the majority of the plaintiffs are Washington residents, the majority of the crew were not.
The fishermen rely on Greene v. Pacific King Fisheries, Inc.,[42] in which the court addressed this question and concluded the federal and state interests were consistent. There, most of the seamen were not Washington residents, but the defendant did business in the state of Washington, hired all crew members in Washington, and paid wages in Washington at the end of the voyages. The court reasoned a double wage remedy creates no uncertainty as to the vessel owners' obligation to pay maritime employees their wages. The court held that "[p]ermitting seamen to bring claims for supplemental penalties for nonpayment of wages under Washington law, in addition to their federal common law claim, is consistent with and furthers the federal interest in enforcing seamen's wage agreements."[43] The court concluded "[t]he state statutes at issue in this case do not conflict with federal maritime law, and the state and federal interests at stake are identical."[44]
We agree. The state statute provides a remedy for violation of a simple obligation that is uniform across state lines and across the high seas: employers must compensate their employees. Courts have a duty to protect maritime workers, and there is a strong federal interest in ensuring seamen are paid properly.[45] Washington likewise has a strong interest in ensuring that its residents are paid their wages, and that Washington employers compensate their workers. Of the 12 fishermen here, 10 are Washington residents. All defendants are Washington employers. One is a Washington limited *455 partnership, and the other two are Alaska corporations whose principal places of business are in Washington. Many of the fishermen were recruited here, and most flew from airports in Washington to meet the vessels in Russia, carrying supplies for All Alaskan.
That the fishermen worked in the territorial waters of the Russian Federation on vessels registered in the Russian Federation does not lend greater weight to the federal interests here. Application of the statute will not disrupt the day-to-day employer-employee relationships beyond the waters of this state, or influence maritime actors as they make management decisions.[46]
All Alaskan relies upon the Ninth Circuit's holding in Fuller v. Golden Age Fisheries,[47] that the Fair Labor Standard Act (FLSA) preempts application of the Alaska minimum wage statute. FLSA exempts seamen from the Act's wage and overtime provisions.[48] The plaintiffs in Fuller argued that despite the express exemption, the Alaska wage and overtime statute should apply. Plaintiffs principally relied upon Pacific Merchant Shipping Association v. Aubry,[49] wherein the Ninth Circuit held FLSA did not preempt application of the California overtime pay laws where the seamen were California residents engaged in oil spill cleanup off the California coast. Those significant interests were held not present in Fuller, because the Fuller plaintiffs were not Alaska residents and had minimal contact with Alaska.
We find this case closer to Aubry than to Fuller. FLSA specifically and expressly exempted seamen from its wage and overtime protections. Aubry nonetheless permitted application of California law because of the FLSA savings clause permitting states to set more stringent overtime protections, and California's strong state interests. Similarly, fishermen are exempted from the seamen's double wage penalty statute,[50] Congress provided a savings clause,[51] and Washington's interests are strong. Like the Aubry plaintiffs, most of the fishermen here are Washington residents recruited and hired in Washington.
All Alaskan argues, however, that the international nature of the voyage could produceand in fact has produceddiffering results in various lawsuits, and that "[a]dmiralty law should not be so malleable that a defendant's liability turns on the residence of the plaintiff or the forum in which he has chosen to sue."[52] Most particularly, All Alaskan calls attention to the different result in a suit by other fishermen against the same joint venture. In Narte v. All Alaskan Seafoods, Inc.,[53] the district judge for the Western District of Washington dismissed state law claims as preempted. The judge empaneled an advisory jury, which determined that each fisherman was paid less than his agreed crew share.[54] The judge accepted this determination, but rejected the jury's calculation of gross receipts.
Among the issues on appeal was whether the district court improperly substituted its judgment of the fair amount due to the fishermen for the amount to which the parties had agreed, and whether federal maritime law preempted the state attorney fee statute. In an unpublished opinion, the Ninth Circuit agreed with the fishermen that they "signed an integrated contract and are entitled to what they agreed upon, even if the deal they made would be unprofitable *456 for their promissors,"[55] and held the district judge's determination of gross receipts was not clearly erroneous.[56] The court observed that Washington "had a substantial relationship to the transaction because these fishermen were hired out of Washington and several defendants are headquartered or organized in Washington."[57] The court nonetheless reluctantly held that application of the state attorney fees statute was preempted.[58]
While it is certainly true that the results of these two trials were different, the chief reason for any such difference appears to have been the jury's evaluation of the evidence, not the preemption rulings. But even if the difference lies in the application of state law, we do not agree with All Alaskan that the federal interest in uniformity of remedies affecting maritime commerce demands preemption here. While vessel owners have a strong interest in a rule (uniform or not) against punitive damages, it is not at all clear that the federal maritime interest demands such a rule.[59] The maritime obligation to pay the wages due is the uniform rule demanded by federal concerns for marine commerce. Unless vessel owners plan their commerce with a breach of that obligation in mind, jurisdictional differences in possible consequences will play no part in conduct on the high seas. By preserving common law remedies, Congress has ensured variation, and appears not to fear a maritime collapse will ensue from their application.
The requirement of uniformity is not absolute,[60] and "a state law claim should not be dismissed simply because it would result in differing remedies for plaintiffs in different parts of the country; such a claim is foreclosed only if the state law in question frustrates a fundamental tenet of admiralty law."[61]
Washington's double wage provision does not conflict with federal maritime law, and does not work material prejudice to a characteristic feature of that law, or disrupt its harmony and uniformity. The trial court properly applied the state statute and doubled the wage award of each fisherman.

II. Attorney Fees Provision

All Alaskan contends that even if the Washington double wage provision in RCW 49.52.070 applies, the attorney fees provision is preempted. There is no federal statute, so we first consider whether a state fee award would work material prejudice to a characteristic feature of the general maritime law.[62]
Federal courts adhere to the so-called American rule, which prohibits attorney fees to prevailing parties absent a contract or statute.[63] Despite the statute authorizing fees here, All Alaskan asserts there is a general maritime rule prohibiting a state attorney fee award, and several circuits have so held.[64] In its decision involving other fishermen on the same joint venture in Narte *457 v. All Alaskan Seafoods, Inc.,[65] the Ninth Circuit affirmed denial of attorney fees, stating "we decline to deviate from our sister circuits on this issue."[66] The Narte court's reasoning is abbreviated:
The crewmen have a good argument [that state fees legislation is not preempted] under the doctrine as stated in Jensen.[67] Also, it is hard to see a flat contradiction between the state statute and the American Rule, because the American Rule has always had an exception where statutes provided for attorneys' fees awards. Nevertheless, every circuit to have examined the issue has held that, despite an applicable state statute providing for attorney's fees, they are not available in admiralty cases. Admiralty is a field in which national uniformity is especially important. Accordingly, we decline to deviate from our sister circuits on this issue, and affirm the district court's denial of attorneys' fees.[68]
We agree with the Narte court's observation that the crewmen have a good argument and that it is hard to see a contradiction. But in its belief that every circuit has held fees unavailable in admiralty cases, the Narte court was simply wrong.
In fact, the circuits are distinctly split. The issue has frequently arisen in the context of maritime insurance cases, with varying results.[69] Indeed, after Narte was decided, the Eleventh Circuit squarely held in All Underwriters v. Weisberg[70] that no such general rule exists. The Weisberg court reviewed the various cases, particularly the Second Circuit's decision in American National Fire Insurance Co. v. Kenealy,[71] and expressly disagreed with the Second Circuit's assertion that attorney fees are generally prohibited in maritime insurance cases.[72] The court found fault with both the authorities and the reasoning of the Kenealy court, noting its reliance upon the general American rule, and held that defendants did not "provide any reason, nor have we found one, to require a unitary and uniform federal rule respecting attorney's fees in maritime insurance litigation."[73] The Weisberg court held that a district court may award attorney fees under a Florida statute to an insured who prevails against its maritime insurer.[74]
The Narte court's rejection of statutory attorney fees rested solely on cases applying the American rule,[75] and so suffers from the flaws identified by the Weisberg court. In any event, after Weisberg, it certainly cannot be argued that there is a uniform rule prohibiting attorney fees in maritime cases.
*458 Outside the insurance context, there are few decisions on this issue.[76] All Alaskan relies on Southworth Machinery Co. v. F/V Corey Pride,[77] in which the court considered application of an attorney fee provision in the Massachusetts Unfair Trade Practices Law, and concluded maritime law preempted the state fee provision because liability was based on breach of a maritime contract.[78] We are unpersuaded by the Southworth court's analysis, however, for the same reason the Weisberg court was not persuaded by its sister circuits. Like those of the Second Circuit in Kenealy, the authorities relied upon by the Southworth court rely simply on the American rule.[79]
The Alaska Supreme Court considered this issue in Hughes v. Foster Wheeler Co.,[80] a personal injury and wrongful death action. The question was whether an Alaska civil rule providing for attorney fees to the prevailing party was preempted. The court reviewed the history of the American rule prohibiting an award of attorney fees, and concluded it "stems not from admiralty law itself, but rather from the fee-shifting rules used in most American courts."[81] The Alaska court concluded that just as the doctrine of forum non conveniens is not characteristic of general maritime law, so too the American rule prohibiting attorney fees is not characteristic of general maritime law.[82] The Hughes court's reasoning is sound. The American rule is not a characteristic feature of general maritime law preempting RCW 49.52.070.
We finally consider whether an award of attorney fees would disrupt the harmony and uniformity of maritime law, an inquiry that requires us to balance the implicated state and federal interests. We see no federal interests here, or none different from Washington's. Vessel owners already have legal and non-legal incentives to pay their crew. It is highly unlikely that an attorney fee remedy would alter the conduct of vessel owners on the high seas, or affect their relationships with fishermen. Fishermen, on the other hand, should not be required to expend a substantial sum in order to collect their rightful wages. We see no risk to maritime commerce in the simple remedy of attorney fees in wage cases.
Maritime law already tolerates considerable disuniformity in this area. Besides the lack of consensus among the circuits noted above, admiralty courts generally give effect to parties' choice of law clauses in maritime contracts, which may dictate the availability of attorney fees.[83] In addition, equity may warrant an award of attorney fees in admiralty cases.[84] In sum, we discern little harmony in this area, and no risk that an attorney fee award under RCW 49.52.070 will disrupt maritime commerce. The trial court properly applied RCW 49.52.070 and awarded attorney fees.[85]

III. State Prejudgment Interest Rule and Applicable Rate

The trial court awarded prejudgment interest at 12 percent, this state's statutory *459 rate. The parties dispute whether the state or general maritime rule on prejudgment interest applies, and at what interest rate. Again, we engage in preemption analysis.
In Washington, "whether prejudgment interest is awardable depends on whether the claim is a liquidated or readily determinable claim, as opposed to an unliquidated claim."[86] Admiralty courts, however, have long disdained the liquidated/non-liquidated distinction.[87] General maritime law is traditionally hospitable to prejudgment interest,[88] because full compensation is a basic principle of admiralty law.[89] Interest should be awarded absent peculiar or exceptional circumstances justifying denial.[90] The Washington rule governing prejudgment interest thus conflicts with the maritime rule, and its application is preempted.
All Alaskan asserts, however, that if the state double wage penalty statute applies, then state law should determine whether prejudgment interest is proper. The first problem with this argument is that the prejudgment interest question has nothing to do with the double wage statute. The wages were awardable under general maritime law, and interest was awarded only on the wages, not the doubled portion of the award. In addition, the authorities upon which All Alaskan relies are not preemption cases, and are otherwise inapposite.
For example, All Alaskan relies on M/V Tungus v. Skovgaard,[91] in which the United States Supreme Court reiterated the rule that "when admiralty adopts a State's right of action for wrongful death, it must enforce the right as an integrated whole, with whatever conditions and limitations the creating State has attached."[92] In other words, when admiralty courts protect rights arising under state law, state substantive law applies.[93] This proposition is hardly controversial, but it is not helpful to us here. Prejudgment interest was awarded on damages arising under the fishermen's maritime claim, not on the double wage award under state law.
All Alaskan's reliance on Roswall v. Grays Harbor Stevedore Co.[94] is also misplaced. There, our Supreme Court considered whether contributory negligence operated as a complete defense in a maritime case under a state wrongful death statute, despite the federal rule that contributory negligence only reduces damages. The court held it did:
That is a right of action which is not known to the maritime law, and it has been repeatedly held that accompanying that right are all the liabilities and reservations imposed upon it by the state or common law. The right of action depending upon the state statute, that right can only be enforced subject to the limitations imposed upon it by the laws of the state.[95]
From this, All Alaskan urges us to apply the state rule on prejudgment interest. But there is a wide difference between deciding whether a litigant can assert a state defense *460 to a claim available only under state law, and deciding which of two rules determines prejudgment interest on a claim available under both state and federal law. Roswall is not helpful here.
Finally, All Alaskan argues if prejudgment interest is awarded, the rate of interest should be determined as applied by the Ninth Circuit, where prejudgment interest is based on U.S. Treasury bill rates.[96] This rate is lower than the rate used by the trial court.[97] All Alaskan argues the federal rule is "well-settled," and application of the state rule "will subject maritime defendants to inconsistent and inequitable results for essentially identical conduct."[98] But while use of the Treasury bill rate may be well settled in the Ninth Circuit, it is not at all settled in the other circuits (or even within the other circuits).[99] District courts are not bound to apply a particular rate.[100] In the absence of a uniform rule, the rate to be applied is a matter for the sound discretion of the trial court.[101]
We conclude there is a direct conflict between Washington's prejudgment interest rule and the federal rule, such that application of the state rule is preempted. Under general maritime law, the fishermen are entitled to prejudgment interest. Given the lack of uniformity as to the rate to be applied, the trial court did not abuse its discretion in applying the state statutory rate.
Affirmed.
The balance of this opinion has no precedential value and will not be published, but will be filed for public record pursuant to RCW 2.06.040.
COX and COLEMAN, JJ., concur.
NOTES
[1] Clerk's Papers at 23.
[2] All Alaskan does not appeal this aspect of the award.
[3] 28 U.S.C. § 1333(1). See Stanton v. Bayliner Marine Corp., 123 Wash.2d 64, 82, 866 P.2d 15 (1993) (citing Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222-23, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986)). "[W]hen Congress established a separate admiralty jurisdiction and empowered the judiciary to develop substantive maritime principles for use nationwide, it simultaneously assured that state law would continue to play some role in maritime affairs through the `savings to suitors' clause." Ellenwood v. Exxon Shipping Co., 984 F.2d 1270, 1279 (1st Cir.1993) (citation omitted).
[4] Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222-23, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986).
[5] 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).
[6] 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). See Ballard Shipping Co. v. Beach Shellfish, 32 F.3d 623, 627 (1st Cir.1994).
[7] Jensen 244 U.S. at 216, 37 S.Ct. 524.
[8] RCW 49.52.050 provides in relevant part:

Any employer or officer, vice principal or agent of any employer, ... who
....
(2) Wilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract;
....
Shall be guilty of a misdemeanor.
[9] RCW 49.52.070 provides in relevant part:

Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: Provided, however, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.
[10] Am. Dredging, 510 U.S. at 447, 114 S.Ct. 981.
[11] Hoddevik v. Arctic Alaska Fisheries Corp., 94 Wash.App. 268, 278, 970 P.2d 828 (1999), cert. denied, 528 U.S. 1155, 120 S.Ct. 1161, 145 L.Ed.2d 1072 (2000).
[12] Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 572, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (discussing former 46 U.S.C. § 596, repealed by Pub.L. 988-89, § 4(b), Aug. 26, 1983, 97 Stat. 600-04) (reversing denial of over $300,000 penalty award where employer withheld $412.50 without sufficient cause).
[13] 46 U.S.C. § 10301(b); see also 46 U.S.C. § 10313(h) ("Subsections (f) and (g) of this section do not apply to a fishing or whaling vessel or a yacht.").
[14] See Griffin, 458 U.S. at 571 n. 7, 102 S.Ct. 3245.
[15] 556 F.Supp. 168 (D.Alaska 1983).
[16] See Sewell, 556 F.Supp. at 169 (discussing former 46 U.S.C. § 596).
[17] Sewell, 556 F.Supp. at 170.
[18] Putnam v. Lower, 236 F.2d 561, 570 (9th Cir.1956).
[19] For example, a seaman is entitled to double wages if not paid within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier. 46 U.S.C. § 10313(f). Compensation owed to fishermen based on crew share, however, is dependent upon the catch and may take longer to determine.
[20] 46 U.S.C. § 10601.
[21] 46 U.S.C. § 10602.
[22] 46 U.S.C. § 10602(c).
[23] Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 121 S.Ct. 993, 999, 148 L.Ed.2d 931 (2001) (quoting Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 123, 44 S.Ct. 274, 68 L.Ed. 582 (1924) (emphasis added)); see also Bergeron v. Quality Shipyards, Inc., 765 F.Supp. 321, 323 (E.D.La. 1991) (citing Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 245, 63 S.Ct. 246, 87 L.Ed. 239 (1942)); Greene v. Pac. King Fisheries, Inc., 1993 WL 565333 *4 n. 2, 1993 A.M.C. 2578, 2580 n. 2 (W.D.Wash.1993) (46 U.S.C. § 10602(c) saves both common law and statutory rights such as those in RCW 49.52.070).

The parties dispute whether Greene may be cited, because it is reported only in American Maritime Cases (A.M.C.), and not in the Federal Supplement. We note that the U.S. Supreme Court, the Ninth Circuit, and our Supreme Court have cited with approval decisions published only in the A.M.C. reporter. See Sea-Land Servs. v. Gaudet, 414 U.S. 573, 585 n. 13, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974); Su v. M/V S. Aster, 978 F.2d 462, 470 (9th Cir.1992); Stanton v. Bayliner Marine Corp., 123 Wash.2d 64, 78, 866 P.2d 15 (1993); see also Hoddevik v. Arctic Alaska Fisheries Corp., 94 Wash.App. 268, 281, 970 P.2d 828 (1999); Ross v. Frank B. Hall & Co., 73 Wash. App. 630, 635, 870 P.2d 1007 (1994).
[24] Am. Dredging, 510 U.S. at 447, 114 S.Ct. 981 (quoting So. Pac. Co. v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917)).
[25] Am. Dredging, 510 U.S. at 447, 114 S.Ct. 981; Ballard Shipping Co. v. Beach Shellfish, 32 F.3d 623, 627 (1st Cir.1994).
[26] Thomas J. Schoenbaum, Admiralty and Maritime Law, § 5 17, at 227 (3d ed.2001); see also David W. Robertson, Punitive Damages in American Maritime Law, 28 J. MAR. L. & COM. 73 (1997).
[27] 777 F.2d 57 (2d Cir.1985).
[28] 777 F.2d at 66.
[29] The Thyssen court cited only to Restatement (Second) of Contracts § 355, Williston on Contracts, and Corbin on Contracts. See Thyssen, 777 F.2d at 63. Restatement (Second) of Contracts § 355 (1981) provides: "Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." The Restatement also notes that states have enacted statutes varying this rule. See Restatement (Second) of Contracts § 355, cmt. a.
[30] See e.g., Gayner v. The New Orleans, 54 F.Supp. 25, 27 (N.D.Cal.1944) ("It is too well established to require substantiation by citation, that the fullest protection to seamen for all maritime services has always been the policy of the Admiralty.").
[31] "Maintenance and cure is the maritime analog to land-based industrial insurance paying an injured seaman's medical expenses (cure) and compensation in lieu of wages (maintenance) for injuries incurred in service of a ship." Miller v. Arctic Alaska Fisheries Corp., 133 Wash.2d 250, 268, 944 P.2d 1005 (1997). See also Guevara v. Mar. Overseas Corp., 59 F.3d 1496 (5th Cir.1995) (punitive damages not available in action for failure to pay maintenance and cure). RCW 49.52.050 does not apply in actions for maintenance and cure. Long v. F/V Melanie, 918 F.Supp. 323, 324 (W.D.Wash.1996).
[32] Thyssen, 777 F.2d at 62 (citing Vaughan v. Atkinson, 369 U.S. 527, 532, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962)).
[33] 57 F.3d 1495 (9th Cir.1995).
[34] Appellants' Brief at 14.
[35] Compare Glynn, 57 F.3d at 1505 with Thyssen, 777 F.2d at 62 n. 6.
[36] 46 U.S.C. § 10313(g).
[37] Appellants' Brief at 13.
[38] 498 U.S. 19, 30, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).
[39] 498 U.S. at 32, 111 S.Ct. 317.
[40] 498 U.S. at 33, 111 S.Ct. 317.
[41] Ballard Shipping Co. v. Beach Shellfish, 32 F.3d 623, 628 (1st Cir.1994); Stanton v. Bayliner Marine Corp., 123 Wash.2d 64, 84, 866 P.2d 15 (1993); see also Pac. Merchant Shipping Ass'n v. Aubry, 918 F.2d 1409, 1421 (9th Cir.1990). Beyond this balancing test, "the [U.S.] Supreme Court's past decisions yield no single, comprehensive test as to where harmony is required and when uniformity must be maintained." Ballard Shipping, 32 F.3d at 628.
[42] 1993 WL 565333, 1993 A.M.C. 2578 (W.D.Wash.1993).
[43] Greene, 1993 WL 565333 at *3, 1993 A.M.C. at 2583.
[44] Greene, 1993 WL 565333 at *4, 1993 A.M.C. at 2584.
[45] Greene, 1993 WL 565333 at *3, 1993 A.M.C. at 2583.
[46] See Am. Dredging Co. v. Miller, 510 U.S. 443, 454, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).
[47] 14 F.3d 1405, 1409 (9th Cir.1994).
[48] 29 U.S.C. § 213(a)(5), (b)(6).
[49] 918 F.2d 1409 (9th Cir.1990).
[50] See 46 U.S.C. § 10313(g).
[51] See 46 U.S.C. § 10602(c).
[52] Appellants' Brief at 25.
[53] 2000 WL 237923, 211 F.3d 1274 (9th Cir. 2000).
[54] To avoid potential retrial, all issues were apparently presented to the advisory jury. The jury found that the withholding of wages was not willful, although it found for one plaintiff on issues of fraud and misrepresentation. The district judge rejected that finding. The fishermen did not appeal the willful withholding issue.
[55] Narte, 2000 WL 237923 at *3.
[56] Narte, 2000 WL 237923 at *3.
[57] Narte, 2000 WL 237923 at *4.
[58] Narte, 2000 WL 237923 at *4.
[59] See Greene, 1993 WL 565333 at *4, 1993 A.M.C. at 2583 ("While vessel owners may prefer a uniformity in federal law that prohibits supplemental penalties in all seamen's wage claims, there is no federal interest in providing such a uniformity at the expense of seamen who bring wage claims to recover unpaid wages.")
[60] Am. Dredging, 510 U.S. at 451, 114 S.Ct. 981.
[61] Ellenwood v. Exxon Shipping Co., 984 F.2d 1270, 1279 (1st Cir.1993).
[62] Am. Dredging, 510 U.S. at 447, 114 S.Ct. 981.
[63] See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).
[64] See Southworth Mach. Co. v. F/V Corey Pride, 994 F.2d 37 (1st Cir.1993) (in breach of warranty claim, Massachusetts statute providing for attorney fees preempted); Am. Nat'l Fire Ins. Co. v. Kenealy, 72 F.3d 264 (2d Cir.1995) (in maritime insurance case, New York statute authorizing award of attorney fees preempted); Sosebee v. Rath, 893 F.2d 54 (3d Cir.1990) (in maritime tort action, application of Virgin Islands statute authorizing attorney fees to prevailing party preempted); Goodman v. 1973 26 Foot Trojan Vessel, 859 F.2d 71, 74 (8th Cir.1988) (reversing attorney fee award in maritime contract action because district court made no finding of bad faith).
[65] 2000 WL 237923, 211 F.3d 1274 (9th Cir. 1999).
[66] Narte, 2000 WL 237923 at *4 (citing Kenealy, 72 F.3d at 270; Southworth Mach., 994 F.2d at 41; Sosebee, 893 F.2d at 56). The Ninth Circuit denied fees under RCW 49.48.030, which authorizes fees "[i]n any action in which any person is successful in recovering judgment for wages or salary owed to him...." That section does not require an additional finding that wages were willfully withheld, as does RCW 49.52.070.
[67] So. Pac. Co. v. Jensen, 244 U.S. 205, 217, 37 S.Ct. 524, 61 L.Ed. 1086 (1917) (holding state worker compensation statute extending to ships loading or unloading in New York preempted because freedom of navigation between the states would be "seriously hampered and impeded"). In response, Congress passed the Longshore and Harbor Workers' Compensation Act. See Bienvenu v. Texaco, Inc., 164 F.3d 901, 903 (5th Cir.1999).
[68] Narte, 2000 WL 237923 at *4 (citations omitted).
[69] See David W. Robertson, Court Awarded Attorneys' Fees in Maritime Cases: The "American Rule" in Admiralty, 27 J. MAR. L. & COM. 507, 562-63 (1996) (collecting cases).
[70] 222 F.3d 1309 (11th Cir.2000).
[71] 72 F.3d 264, 271 (2d Cir.1995).
[72] Weisberg, 222 F.3d at 1314.
[73] Weisberg, 222 F.3d at 1314-15.
[74] Weisberg, 222 F.3d at 1315; see also Great Lakes Dredge & Dock Co. v. Comm'l Union Assurance Co., 2000 WL 1898533 *11 (N.D.Ill.2000) (published opinion) ("Aside from the general `American rule' of fee recovery, there is no particular federal rule governing the recovery of attorneys' fees in marine insurance disputes. Thus, there is no basis for preempting state law on that issue.").
[75] See note 66 supra.
[76] See e.g., Glynn v. Roy Al Boat Management Corp., 57 F.3d 1495 (9th Cir.1995); Galveston County Navigation Dist. No. 1, v. Hopson Towing Co., 92 F.3d 353, 356-57 (5th Cir.1996). See also Robertson, supra note 68, at 567 (collecting cases).
[77] 994 F.2d 37 (1st Cir.1993).
[78] Southworth, 994 F.2d at 42.
[79] See Southworth, 994 F.2d at 41 (citing Templeman v. Chris Craft Corp., 770 F.2d 245 (1st Cir. 1985)); Sosebee v. Rath, 893 F.2d 54 (3d Cir. 1990); Goodman v. 1973 26 Foot Trojan Vessel, 859 F.2d 71 (8th Cir.1988).
[80] 932 P.2d 784 (Alaska 1997).
[81] Hughes, 932 P.2d at 788-89.
[82] Hughes, 932 P.2d at 788-89 (relying on Am. Dredging, 510 U.S. at 447, 114 S.Ct. 981).
[83] See Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1296-97 (9th Cir.1997).
[84] See Vaughan v. Atkinson, 369 U.S. 527, 529 & 533, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (attorney fees awarded seamen's actions for maintenance and cure, where failure to pay is "willful and persistent"); Galveston County Navigation Dist. No. 1, v. Hopson Towing Co., 92 F.3d 353, 356-57 (5th Cir.1996) (reversing fee award in maritime collision case because no evidence of bad faith during litigation).
[85] Because of our disposition, we do not consider the fishermen's argument that the choice of law clause in the wage contracts independently supports application of Washington law.
[86] Hansen v. Rothaus, 107 Wash.2d 468, 472, 730 P.2d 662 (1986) (prejudgment interest allowable only when amount claimed is liquidated or, if unliquidated, claim is determinable by computation with reference to a fixed standard contained in a contract, without relying on opinion or discretion) (citing Prier v. Refrigeration Eng'g Co., 74 Wash.2d 25, 32, 442 P.2d 621 (1968)). A liquidated claim is one whose "exact amount is fixed and known." Prier, 74 Wash.2d at 32, 442 P.2d 621.
[87] Cement Div., 515 U.S. at 197, 115 S.Ct. 2091.
[88] City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 196, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995) (holding neither a good faith dispute over liability nor the existence of mutual fault justifies denying prejudgment interest in an admiralty collision case); see also Thomas J. Schoenbaum, Admiralty & Maritime Law § 5-21, at 246 (3d ed. 2000) ("The Supreme Court has decided that awarding prejudgment interest is a basic principle of admiralty law and is not a penalty.").
[89] Cement Div., 515 U.S. at 195-96, 115 S.Ct. 2091.
[90] Cement Div., 515 U.S. at 195, 115 S.Ct. 2091; Jones v. Spentonbush-Red Star Co., 155 F.3d 587, 593 (2d Cir.1998).
[91] 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959).
[92] Tungus, 358 U.S. at 592, 79 S.Ct. 503.
[93] Tungus, 358 U.S. at 593, 79 S.Ct. 503.
[94] 138 Wash. 390, 244 P. 723 (1926).
[95] Roswall, 138 Wash. at 397, 244 P. 723.
[96] See Columbia Brick Works, Inc. v. Royal Ins. Co., 768 F.2d 1066, 1071 (9th Cir.1985).
[97] See RCW 19.52.010.
[98] Appellants' Reply Brief at 22.
[99] See Alan R. Gilbert, Annot., Admiralty-Award of Prejudgment Interest in Admiralty Suits, 34 A.L.R. FED. 126, 172 (1977) ("[T]here has not been uniformity of approach [in choosing the interest rate], even within particular Circuits.").
[100] Nat'l Shipping Co. of Saudi Arabia v. United States, 95 F.Supp.2d 482, 495 (E.D.Va.2000) (citing Ameejee Valleejee and Sons v. M/V Victoria U., 661 F.2d 310, 312 (4th Cir.1981)).
[101] Saavedra v. Korean Air Lines Co., Ltd., 93 F.3d 547, 555 (9th Cir.1996).