30 P.3d 1 (2001)
107 Wash.App. 713
AXESS INTERNATIONAL LTD., Respondent,
v.
INTERCARGO INSURANCE COMPANY, Appellant.
No. 45929-5-I.
Court of Appeals of Washington, Division 1.
August 6, 2001.
*3 Stephen L. Bucklin, Los Angeles, CA., for Appellant.
Robert J. Bocko, Seattle, for Respondent.

*2 PUBLISHED OPINION (IN PART)
ELLINGTON, J.
The question here is whether federal maritime law preempts state law as to an award of attorney fees, where the claim involves a maritime surety bond. We hold it does not.

FACTS
Max Bright Services Ltd. is a Hong Kong corporation that operates as a non-vessel-operating common carrier (NVOCC), which is an intermediary between the shipper of goods and the operator of the vessel that carries the goods. As required by federal statute,[1] Max Bright obtained a bond from a domestic company, Intercargo Insurance Company, which does business in the state of Washington.
In 1995, Axess International Ltd. arranged for a shipment of goods from Hong Kong to the United States through a bill of lading issued by Max Bright. After Max Bright misdelivered the goods, Axess sued Max Bright in Hong Kong and obtained a default judgment in the amount of $141,960. Axess domesticated the judgment in King County Superior Court, and filed a claim on Max Bright's bond with Intercargo. Intercargo refused Axess' claim.
Axess brought suit against Intercargo in the Western District of Washington, seeking to recover under the bond and alleging claims under state law, including insurance bad faith and violation of the Consumer Protection Act (CPA).[2] Axess also requested Olympic Steamship[3] attorney fees. The district court ruled in favor of Axess on the bond claim, declined supplemental jurisdiction over the state claims, and ruled that Washington law applied to those claims, rejecting Inter cargo's preemption and choice of law arguments.[4]
While Intercargo's federal appeal was pending, Axess filed this action in King County Superior Court, alleging negligent and bad faith claims handling, violation of the CPA, and seeking to recover fees and costs incurred in federal court. Intercargo requested a stay pending the outcome of its federal appeal, and moved to dismiss Axess' claims. Both motions were denied.
The Ninth Circuit affirmed the district court's ruling that Intercargo's bond covered Max Bright's misdelivery of the goods. The court held, however, that given the district court's refusal to entertain the pendent state claim, its ruling that Washington law applied to Axess' state claims was beyond its jurisdiction.[5] Axess then moved for judgment in superior court on its claim under Olympic Steamship for fees incurred in the federal bond litigation. The superior court granted the motion. Axess' other claims were dismissed without prejudice. Intercargo appeals.

DISCUSSION
Intercargo argues that Washington state law does not apply under choice of law rules, and that if Washington state law applies, it is preempted by federal maritime law. Intercargo also argues that even if Washington law is not preempted, it would not authorize an award of fees here. Intercargo also challenges the reasonableness of the fees, and the propriety of awarding costs and prejudgment interest. Finally, Intercargo assigns error to the court's denial of a stay pending resolution of the appeal in the Ninth Circuit.
*4 We agree with Intercargo only as to prejudgment interest.
Washington Law Governs
The principal issue here is whether Axess' state law claims for attorney fees and interest are preempted by federal maritime law. In order to determine whether federal law preempts application of state law, we must first decide what state law would govern. Intercargo argues that under Washington conflicts rules, Washington law would not govern, because none of the parties has any connection to Washington and none of the relevant conduct occurred in Washington. Intercargo argues the law of Illinois[6] or Hong Kong should apply. But Intercargo never pleaded or proved the law of either, and does not identify a conflict between Washington law and the other possible choices.
The law of any other state claimed to be applicable must be pleaded and proved,[7] and in the absence of such pleading, trial courts are not required to take judicial notice of the law of any other state.[8] "An actual conflict between the law of Washington and the law of another state must be shown to exist before Washington courts will engage in a conflict of law analysis."[9] Not until its reply brief with this court did Intercargo argue that Washington and Illinois law actually conflict. An issue raised and argued for the first time in a reply brief is raised too late.[10]
Intercargo argues it properly pleaded Illinois law in its answer in superior court, when it incorporated by reference its briefs in the Ninth Circuit. Even were such an incorporation sufficient, Intercargo's reply brief in federal court merely stated that if state law were to apply, that state would be Illinois, and that under Illinois law, the Hong Kong judgment was inadmissible against the surety.[11] This is not the question presented here. Intercargo has thus demonstrated no relevant conflict between Washington law and that of a foreign jurisdiction, and conflicts analysis is inappropriate. Washington law therefore governs the attorney fees issue here, if not preempted.
Award for Fees Incurred in Federal Court
Under Olympic Steamship Co. v. Centennial Ins. Co.,[12] an insured who is "compelled to assume the burden of legal action to obtain the benefit of its insurance contract"[13] is entitled to recover attorney fees. The Olympic Steamship rule extends to an action to recover on a surety bond.[14] Intercargo argues Olympic Steamship does not authorize an award of fees incurred in federal court. If Intercargo is correct, the preemption issue is irrelevant. A party's entitlement to attorney fees is an issue of law.[15]
Olympic Steamship`s language was broad: "[A]n award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract...."[16] *5 We recently applied this broad language in Fluke Corp. v. Hartford Accident & Indemnity Co.,[17] in which we affirmed an award of fees incurred in California, where the insured defended a declaratory action brought by its insurer. Fluke obtained dismissal of the insurer's action in California, and proceeded to litigate the same coverage issues in Washington. We affirmed the superior court's award of the California litigation fees as appropriate under Olympic Steamship.[18] Like the fees for Fluke's California litigation, Axess' federal litigation fees were necessary to establish coverage, and are properly awarded under Olympic Steamship.
Intercargo also argues, however, that this case involves a claim dispute, not a coverage dispute, and therefore Olympic Steamship fees still are not authorized. Intercargo's characterization of this controversy is inaccurate.
Fees are awarded under Olympic Steamship where the insurer unsuccessfully denies coverage, not where the insurer acknowledges coverage but disputes the value of the claim.[19] "Coverage disputes include cases in which the issue of any coverage is disputed and cases in which the `extent of the benefit provided by an insurance contract' is at issue."[20] Coverage questions generally concern who is insured, the type of risk insured against, or whether the insurance contract exists.[21] By contrast, claim disputes raise factual questions about the extent of the insured's damages.[22]
The federal litigation between Axess and Intercargo clearly constituted a coverage dispute. Max Bright's bond covered damages arising from "transportation-related activities," as required by federal statute.[23] Intercargo refused payment on grounds that Axess' claim did not involve transportation-related activities. The district judge and the Ninth Circuit decided this very issue, held Max Bright's misdelivery was an activity covered by the bond, and entered judgment in favor of Axess.[24]
In support of its insistence that this is merely a claim dispute, Intercargo cites the "claim against a surety" language in the federal statute:
(b) Claims against surety
A bond, insurance, or other surety obtained pursuant to this section shall be available to pay any judgment for damages against a non-vessel-operating common carrier arising from its transportation-related activities under this chapter or order for reparations issued pursuant to section 1710 of this Appendix or any penalty assessed against a non-vessel-operating carrier pursuant to section 1712 of this Appendix.[25]
Intercargo's argument is wholly without merit. Use of the term "claim" to describe a demand against the bond does not transform this litigation into a claim rather than coverage dispute for Olympic Steamship purposes.
Olympic Steamship authorizes recovery of Axess' attorney fees incurred in federal court *6 to establish coverage under Max Bright's surety bond with Intercargo.
Federal Maritime Law Does Not Preempt Fee Award
Intercargo argues that if Olympic Steamship authorizes recovery of attorney fees here, it conflicts with federal maritime law and is therefore preempted. We review this question de novo.[26]
State law applies to maritime insurance contracts just as it does to nonmaritime contracts, so long as it does not clearly conflict with federal maritime law.[27] Substantive remedies afforded by the states must conform to governing federal maritime standards.[28] State legislation is invalid as applied to maritime commerce "`if it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations.'"[29]
Intercargo makes three arguments, two grounded in statute and one in admiralty jurisprudence. Under 31 U.S.C. §§ 9304-05, the Secretary of Treasury is authorized to conditionally approve sureties and revoke their authority to do business under certain circumstances. Regulations under the statute set conditions for companies executing surety bonds in favor of the United States, and provide an administrative remedy for the agency when a surety fails to perform on the bond.[30] Intercargo argues its bond is governed by these regulations. But the regulations govern sureties doing business with the United States,[31] and the United States is not the obligee on the bond. Although Intercargo's bond provides that the principal and surety "are held and firmly bound unto the United States of America in the sum of $50,000," the bond contemplates the benefit of the bond will run to unnamed third parties.[32] The bond is not governed by 31 C.F.R. §§ 223.18-22. In addition, nothing in the statute or regulations prohibits a state fee award.
Intercargo next argues that chapter 36 of the Shipping Act of 1984[33] is a comprehensive scheme which leaves no room for supplementary or limiting state regulation. It is the Shipping Act that requires a NVOCC, such as Max Bright, to be bonded.[34] Intercargo relies solely on the declared purposes of chapter 36:
(1) to establish a nondiscriminatory regulatory process for the common carriage of goods by water in the foreign commerce of the United States with a minimum of government intervention and regulatory costs;
(2) to provide an efficient and economic transportation system in the ocean commerce of the United States that is, insofar *7 as possible, in harmony with, and responsive to, international shipping practices;
(3) to encourage the development of an economically sound and efficient United States-flag liner fleet capable of meeting national security needs; and
(4) to promote the growth and development of United States exports through competitive and efficient ocean transportation and by placing a greater reliance on the marketplace.[35]
But nothing in these purposes is subverted by a state award of attorney fees following a coverage dispute. Moreover, by the express terms of the McCarran-Ferguson Act, Congress has largely left the regulation of insurance to the states:
Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.[36]
The Act also declares that congressional silence is not to be construed as a barrier to state regulation of insurance: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance" (with exceptions not relevant here).[37] Intercargo identifies no provision in the Shipping Act which regulates the insurance relationship, and research reveals none.
Intercargo mistakenly relies on United States for the Benefit and Use of Ehmcke Sheet Metal Works v. Wausau Ins. Company.[38]Ehmcke involved a suit under the Miller Act, 40 U.S.C. § 270(a)(2), which requires a contractor on a federal construction project to furnish a bond to secure payment to labor and material suppliers whose common law mechanic's lien remedies are unavailable against federal property.[39] The court first noted that a state cause of action for breach of the covenant of good faith and fair dealing is not preempted by the Miller Act. The court considered whether California law permitted a subcontractor to sue a prime contractor's surety for such a breach, and concluded it did not.[40] Lastly, the court rejected an argument that such an action was necessary to effect the purposes of the Miller Act, holding that "[i]f additional remedies are required to fulfill federal purposes such remedies would be by act of Congress and not by individual state courts."[41]Ehmcke is entirely inapposite here. The court did not conduct a preemption analysis, interpreted California law on a state law question, and interpreted federal law on a federal law question.
Neither the sureties statute nor the Shipping Act preempts an award of attorney fees under state law.
Whether application of state law is preempted because it interferes with the proper harmony and uniformity of maritime law depends on a balancing of the federal and state interests involved.[42] Intercargo contends that a uniform rule of admiralty jurisprudence prohibits attorney fees unless there is a finding of bad faith.
First, there is no such uniform rule.[43] Further, Intercargo offers no reason to believe *8 that a state fee award would disrupt the harmony and uniformity of maritime law. Nor does Intercargo engage in a balancing of the state and federal interests involved.
The state of Washington has a strong interest in protecting insureds who must resort to litigation to establish coverage. The federal interest in a rule limiting fees to a bad faith context is not apparent. Indeed, the Eleventh Circuit discerned no federal interest at all.[44] It is highly unlikely a fee award in Washington would alter the business practices of insurers who issue bonds to NVOCCs. Insurers already have legal incentives to pay on the bonds.
The uniformity requirement is not absolute, and state law must yield only where its application would frustrate a fundamental tenet of admiralty law.[45] Intercargo provides no argument, reasoned or not, as to why the federal interests here should prevail over Washington's substantial interest. We hold the harmony and uniformity of maritime law does not mandate preemption of the attorney fees determination.
We affirm the award of attorney fees. The remainder of this opinion has no precedential value and will be filed for public record in accordance with RCW 2.06.040.
GROSSE, J., and KENNEDY, J., concur.
NOTES
[1] Former 46 U.S.C.A.App. § 1721 (repealed by, Pub.L. 102-258, Title I, § 118, Oct. 14, 1998, 112 Stat.1914). The statute provided, in relevant part: "(a) Each non-vessel-operating common carrier shall furnish ... a bond ... satisfactory to insure the financial responsibility of that carrier [which] .... (b) .... shall be available to pay any judgment for damages ... arising from its transportation-related activities...."
[2] Chapter 19.86 RCW.
[3] Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991).
[4] See Axess Int'l Ltd. v. Intercargo Ins. Co. 1998 WL 229576, 1998 A.M.C. 1022 (W.D.Wash.1998).
[5] See Axess Int'l Ltd. v. Intercargo Ins. Co., 183 F.3d 935 (9th Cir.1999).
[6] Intercargo is an Illinois corporation and issued the bond in Illinois.
[7] Int'l Tracers of Am. v. Hard, 89 Wash.2d 140, 144, 570 P.2d 131 (1977) (citing RCW 5.24.040).
[8] RCW 5.24.010-.070; Burnside, 123 Wash.2d at 103, 864 P.2d 937.
[9] Burnside v. Simpson Paper Co., 123 Wash.2d 93, 103, 864 P.2d 937 (1994).
[10] Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
[11] See Clerk's Papers at 113. Both the district court and the Ninth Circuit found Intercargo's briefs wanting on this issue. The district judge stated: "Intercargo argues, Washington law should not apply. Intercargo, however, fails to provide an alternative to Washington law." Axess, 1998 WL 229576, at *4. The Ninth Circuit stated: "Intercargo did not suggest (until its reply brief) what state's law might instead apply." Axess, 183 F.3d at 942.
[12] 117 Wash.2d 37, 811 P.2d 673 (1991).
[13] Olympic S.S., 117 Wash.2d at 54, 811 P.2d 673.
[14] See Estate of Jordan v. Hartford Accident and Indem. Co., 120 Wash.2d 490, 508, 844 P.2d 403 (1993).
[15] McGreevy v. Oregon Mut. Ins. Co., 90 Wash. App. 283, 289, 951 P.2d 798 (1998).
[16] Olympic S.S., 117 Wash.2d at 53, 811 P.2d 673 (emphasis added).
[17] 102 Wash.App. 237, 7 P.3d 825 (2000), review granted, 143 Wash.2d 1026, 22 P.3d 802 (May 1, 2001).
[18] Fluke, 102 Wash.App. at 255, 7 P.3d 825.
[19] Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 280, 876 P.2d 896 (1994); Solnicka v. Safeco Ins. Co. of Ill., 93 Wash.App. 531, 533-34, 969 P.2d 124 (1999).
[20] Leingang v. Pierce County Med. Bur., Inc., 131 Wash.2d 133, 147, 930 P.2d 288 (1997) (quoting McGreevy v. Oregon Mut. Ins. Co., 128 Wash.2d 26, 33, 904 P.2d 731 (1995)).
[21] "`Coverage means the assumption of risk of occurrence of the event insured against before its occurrence.'"Kroeger v. First Nat'l Ins. Co. of Am., 80 Wash.App. 207, 210, 908 P.2d 371 (1995) (quoting Ryan v. Cuna Mut. Ins. Soc'y, 84 Wash.2d 612, 615, 529 P.2d 7 (1974)); see also Solnicka, 93 Wash.App. at 533-34, 969 P.2d 124.
[22] Kroeger, 80 Wash.App. at 210, 908 P.2d 371 (relying on Dayton, 124 Wash.2d at 281, 876 P.2d 896).
[23] Former 46 U.S.C.A.App. § 1721(a).
[24] See Axess, 183 F.3d at 941-42.
[25] Former 46 U.S.C.A.App. § 1721(b).
[26] Hoddevik v. Arctic Alaska Fisheries Corp., 94 Wash.App. 268, 278, 970 P.2d 828 (1999), cert. denied, 528 U.S. 1155, 120 S.Ct. 1161, 145 L.Ed.2d 1072 (2000).
[27] Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 667-68 (9th Cir.1997).
[28] Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 223, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986).
[29] Paul v. All Alaskan Seafoods, Inc., 106 Wash. App. 406, 411, 24 P.3d 447 (2001) (quoting So. Pac. Co. v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917)).
[30] 31 C.F.R. §§ 223.18-22.
[31] 31 C.F.R. § 223.1.
[32] The bond provides:

This bond shall inure to the benefit of any and all persons who have obtained a judgment for damages against the Principal arising from its transportation related activities or order of reparation issued pursuant to section 11 of the Shipping Act of 1984, and to the benefit of the Federal Maritime Commission for any penalty assessed against the Principal pursuant to section 13 of the Shipping Act of 1984.
Clerk's Papers at 262. Section 13 of the Shipping Act of 1984, 46 U.S.C.A.App. § 1712, provides for civil penalties for violation of chapter 36, "International Ocean Commerce Transportation."
[33] Former 46 U.S.C.A.App. §§ 1701-21.
[34] See former 46 U.S.C.A.App. § 1721(a). The NVOCC's bonding requirement now resides at 46 U.S.C.A.App. § 1718, which consolidates the rules for NVOCCs and ocean freight forwarders into a new category, "ocean transportation intermediaries." See Axess, 183 F.3d at 941 n. 5.
[35] 46 U.S.C.A.App. § 1701.
[36] 15 U.S.C. § 1011. The focus of the McCarran-Ferguson Act is "the relationship between the insurance company and the policyholder." S.E.C. v. Nat'l Sec., Inc., 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).
[37] 15 U.S.C. § 1012.
[38] 755 F.Supp. 906 (E.D.Cal.1991)
[39] Ehmcke, 755 F.Supp. at 908-09.
[40] Ehmcke, 755 F.Supp. at 908-09 (citing K-W Industr. v. Nat'l Sur. Corp., 855 F.2d 640 (9th Cir.1988)).
[41] Ehmcke, 755 F.Supp. at 911.
[42] Am. Dredging, 510 U.S. at 447, 114 S.Ct. 981; Ballard Shipping Co. v. Beach Shellfish, 32 F.3d 623, 628 (1st Cir.1994); Stanton v. Bayliner Marine Corp., 123 Wash.2d 64, 84, 866 P.2d 15 (1993); see also Aubry, 918 F.2d at 1421.
[43] Interstate relies solely upon American National Fire Insurance Co. v. Kenealy, 72 F.3d 264, 270 (2d Cir.1995), in which the Second Circuit purported to recognize such a uniform rule. The Eleventh Circuit has, however, rejected both the rule, and the notion that it is uniform. See All Underwriters v. Weisberg, 222 F.3d 1309, 1314-15 (11th Cir.2000) (discussing cases); see also Paul, 106 Wash.App. at 424, 24 P.3d at 457.
[44] See Weisberg, 222 F.3d at 1314-15.
[45] See Paul, 106 Wash.App. at 422, 24 P.3d at 456.